[Crim. No. 2441. First Dist., Div. One. Apr. 29, 1947.]

THE PEOPLE, Respondent, v. AMOS DALE, Appellant.

Amos Dale, in pro. per. for Appellant.

Fred N. Howser, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

BRAY, J.—Appeal by defendant from an order denying his "Motion to Annul, Vacate, Set Aside Judgment In The Form Coram Nobis (vobis)."

On June 23, 1944, defendant was indicted by the San Francisco grand jury for the crime of murder. At his arraignment the public defender was appointed to represent him, and at the latter's request the time to plead was continued to July 12th. On that day, he entered pleas of "Not Guilty and Not Guilty by Reason of Insanity." The cause was then continued to July 20th, to be set. On that date it was set for trial for September 11th. On September 8th, the indictment was amended to allege four prior felony convictions and incarcerations thereunder. These defendant admitted. On the date

set for trial, September 11th, defendant, accompanied by his counsel, as he had been on all occasions, appeared in court and requested permission to change his plea. Permission having been granted, he withdrew his previous pleas and then pleaded "Guilty." He waived time for sentence and was then sentenced by the court to life imprisonment.

In January, 1946, appellant filed a petition for habeas corpus in the Supreme Court of this state, which was denied. He then petitioned the United States Supreme Court for a similar writ, which petition was likewise denied. An application for habeas corpus in division two of this court was denied. He then petitioned the superior court for a writ of error *coram nobis*, and upon the denial thereof he filed this appeal.

Appellant appears in propria persona, and it is difficult to ascertain from his petition and brief just what points he is trying to make. Also he is mixing matters of appeal with those only cognizable on habeas corpus. In view of the whole situation it is probably better to pass upon the merits of all points raised (insofar as we can figure out what points he is attempting to raise), rather than to determine them on matters of pleading. Nor are we determining the effect of his habeas corpus applications in which he raised most of the questions raised here. For the same reason, we are assuming, without deciding, that all these points may be raised under *coram nobis*. To determine appellant's contentions it has been necessary to examine both his "Opening and Closing Brief" on this appeal and the points and authorities accompanying his petition in the lower court.

█ Appellant's first point seems to be that although he was indicted by the grand jury, he was also entitled to a preliminary hearing before a committing magistrate. As support for this claim he cites *Townsend* v. *Brooks,* 5 Cal. 52. This was a civil case concerning whether an appeal from the justice's court in an action of forcible entry and detainer should be tried in the then county court or the then district court, and obviously is not in point. Appellant cites a number of cases considering situations where either no formal charge at all had been filed, or the proceedings were under an information. He has cited no case holding that where an indictment is found there must also be a preliminary hearing or examination before a committing magistrate. In his points and authorities he quotes from 8 Ruling Case Law, page 105, section 66, as follows: "An indictment cannot be found or

an information filed in any capital case until the right to a preliminary examination has been accorded.'' However, that is a misquotation, as it is only a part of the sentence which reads ''In some jurisdictions an indictment cannot be found,'' etc. That California is not one of those jurisdictions and that appellant is clearly wrong in his contention appears from an examination of our Constitution and the California cases. The Constitution, article I, section 8, provides: ''Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment, with or without such examination and commitment, as may be prescribed by law. . . .'' That a preliminary hearing before a magistrate is not required in the case of an indictment has long been held in California. (*People* v. *Goldenson*, 76 Cal. 328, 345 [19 P. 161]; *Greenberg* v. *Superior Court*, 19 Cal.2d 319, 321 [121 P.2d 713].)

▮ Appellant's second point is either that it requires nineteen members of the grand jury to vote an indictment, or that the indictment fails to show how many members voted his indictment. Appellant refers to ''an Unconstitutional illegal unlawful body of grand jurors a QUORUM that had no Jurisdiction or vitality whatever,'' but does not point out what he claims caused the grand jury to be of that character. Assuming, first, that he is contending that it requires nineteen grand jurors to vote an indictment, he is answered by section 940 of the Penal Code, which provides: ''An indictment cannot be found without the concurrence of at least twelve grand jurors. When so found it must be endorsed, 'A true bill,' and the endorsement must be signed by the foreman of the grand jury.'' (See 14 Cal.Jur. 12 et seq., § 8.) On this point he cites *People* v. *Thurston*, 5 Cal. 69, which held that a grand jury must consist of twenty-three persons and not twenty-four. The statutes then in effect have long since been superseded, among others by sections 192 and 242 of the Code of Civil Procedure, which provide that a grand jury shall consist of nineteen members.

▮ If appellant's position is that the indictment fails to show that twelve members of the grand jury voted to indict, he is likewise wrong. The indictment shows that a ''quorum'' was present, and is endorsed ''a true bill,'' and the endorsement signed by the foreman. As section 940 of the Penal Code, above quoted, requires the concurrence of at least twelve

grand jurors and "when so found" must be endorsed "A true bill" it must be presumed that the foreman would not have signed it as "a true bill" if the requisite twelve jurors had not voted to find it. "It is presumed that the officers [of the grand jury] have performed their duty. . . ." (*People* v. *Meraviglia,* 73 Cal.App. 402, 406 [238 P. 794].)

■ Moreover, a "quorum" means that at least twelve grand jurors were present. In 24 American Jurisprudence 842, section 15, it is said that "the least number necessary to concur in an indictment will be sufficient for a quorum." In *Snider* v. *Rinehart,* 18 Colo. 18, 24 [31 P. 716], it is said that a quorum is "such a number of the officers or members of any body as is competent by law or constitution to transact business." (See, also, Bouvier's Law Dictionary, vol. 3, 3d rev.) In *State* v. *Birbiglia,* 149 La. 4 [88 So. 533], the court was called upon to interpret a Louisiana constitutional provision to the effect that the grand jury of each parish should consist of twelve members, nine of whom were required to concur in finding an indictment. The court held that nine grand jurors would constitute a quorum for finding an indictment, and interpreted "quorum" as meaning the number of grand jurors whose presence was required for transacting business. It would seem that under the authorities, the logical implication of the words "quorum of the grand jury" as indicating who were present at the indictment proceedings, is that as many were there as were required by law to join in finding the indictment—i. e., twelve.

■ Moreover, the indictment appears regular on its face and by appellant's plea and failure to demur or move to set aside the indictment, he has waived any objection which he might have urged as to any irregularities in the organization or impaneling of the grand jury. (*People* v. *Meraviglia,* supra, 73 Cal.App. 402, 407; *People* v. *Beesly,* 119 Cal.App. 82 [6 P.2d 114, 970].) This rule would apply if it be that the appellant is contending that the words "quorum present" on the indictment mean that there were no more than twelve members present. Besides "In the absence of evidence to the contrary, it will be presumed that the grand jury was regularly and legally selected, impaneled, organized and sworn and that their proceedings were lawful and regular." (*People* v. *Meraviglia,* supra, p. 407.) *People* v. *Murphy,* 71 Cal.App. 176 [235 P. 51], is to the same effect. Appellant has indicated no evidence to the contrary here, apparently

standing on his assumption that the indictment should show the actual number of persons present and voting rather than merely indicating the presence and concurrence of a "quorum."

■ A third contention is that appellant "has never faced an accuser in Court of Law this matter." Of course, this contention is completely without merit. The fact that appellant put in a guilty plea to the offense charged in the indictment removed the necessity for the hearing of any evidence in the superior court; and, insofar as the grand jury hearing is concerned, it is specifically provided by Penal Code, section 920 that the grand jury is not legally required to hear any evidence for the defendant.

■ Appellant says that the record shows that he had "no one to defend him." The record shows, as before indicated, that each time appellant appeared in the superior court in this matter, he was accompanied by counsel. In view of such, it is assumed that appellant must mean that he had "no one to defend him" before the grand jury. It is clear that one who is being investigated by a grand jury is not entitled to be represented by counsel before that body.

■ Appellant next maintains that he has been committed without reasonable and probable cause and on the basis of fraud and false representation and perjured testimony before the grand jury. Section 995 of the Penal Code which sets forth the grounds upon which an indictment can be set aside does not provide fraud, false representation or perjured testimony as such ground. It must be stressed here that the appellant, although using the broad language that the indictment was obtained through fraud, false representations and perjury, does not point out what portion of the testimony comes within that category, or what witness committed it, or the slightest respect in which any testimony is untrue.

Respondent claims that appellant cannot raise this question in this kind of a proceeding, that it would have to be raised (if it can be raised at all) by an application for a writ of prohibition. Again, we are not passing upon that question, because first, we find no specification of fraud or perjury, and secondly, having failed to raise the question by appropriate proceedings before his plea of "guilty" it cannot be raised now. It certainly would be a peculiar situation if a person charged by indictment of the commission of a crime, after pleading guilty thereto, were permitted to claim that the

testimony on which the indictment is based was false and perjured. If it were so then the charge was untrue, yet the defendant said by his plea of guilty that it was true.

Some language in appellant's brief would indicate that appellant claims that the evidence before the grand jury was not sufficient to warrant the finding of the indictment. In Penal Code, section 921—which fixes the degree of evidence which will warrant the return of an indictment—it is provided: ''The grand jury ought to find an indictment when all the evidence before them, taken together, if unexplained or uncontradicted, would, in their judgment, warrant a conviction by a trial jury.'' *Davis* v. *Superior Court,* 78 Cal.App.2d 25, 27 [177 P.2d 314], quotes and approves the following language in *Greenberg* v. *Superior Court, supra,* 19 Cal.2d 319: ''If there is some evidence to support the indictment the courts will not inquire into its sufficiency (see cases collected in 59 A.L.R. 573). . . .'' In our case, far from being a situation in which there is only ''some evidence'' to support the indictment, the situation is one in which an examination of the proceedings before the grand jury as produced by appellant causes the conclusion that the grand jury could not help but indict him for a cold-blooded, inexcusable crime. In view of appellant's plea of guilty, no purpose would be served in setting forth here the testimony before the grand jury.

Appellant intimates that there was some sort of collusion between the district attorney and appellant's own counsel, the assistant public defender. He gives no detail, and an examination of the record discloses no basis for the claim. Judging from the evidence before the grand jury, appellant's counsel did exceedingly well for him. Having in mind that appellant while admitting by his plea that he killed his victim ''with malice aforethought,'' has given no reasonable explanation or excuse for his act, nor offered any circumstance which would take the crime out of the category of a deliberate, unjustified, cold-blooded killing of a woman with whom he apparently was intimate, and that he escaped the death penalty, one is forced to the conclusion that his attorney did a rather good job of representing him.

█ Appellant apparently is complaining of the fact that the trial court permitted the indictment to be amended to set up the prior felony convictions. There was no error in this. (*People* v. *Hall,* 220 Cal. 166 [30 P.2d 23].) Section 969a

of the Penal Code provides: "Whenever it shall be discovered that a pending indictment or information does not charge all prior felonies of which the defendant has been convicted either in this state or elsewhere, said indictment or information *shall be forthwith amended* to charge such prior conviction or convictions. . . ." (Emphasis added.)

 Appellant also complains that he was not tried within sixty days of the finding of the indictment, and cites section 1382 of the Penal Code which provides: "The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed. . . . 2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment. . . ." The indictment was presented in court June 23d. The record does not show when defendant was arrested. On July 3d, defendant was brought into court for arraignment and at the request of his counsel the case was continued to July 12th to plead. After plea on that date the case was continued to July 20th to be set. The reason for this continuance does not appear, but no objection was made. On July 20th, the case was set for trial for September 11th. On that day it was called for trial, but defendant pleaded guilty, thereby saving the necessity of the trial. The date set was roughly about eighty days after the finding of the indictment. The record does not show the cause of the delay, whether at the request of defendant or because of congestion in the court. However, no objection was made by the defendant to the delay, and no motion made under section 1382 of the Penal Code to dismiss. Such a motion cannot now be made. Defendant, if he did not request, by his conduct consented to, the delay.

 Appellant complains of the fact that at the proceedings before the grand jury a police officer told of appellant's prior offenses. While these had nothing to do with the crime with which the grand jury charged him, still they are not grounds for this appeal. As said in 13 California Jurisprudence 78, "While the law contemplates that only competent evidence will be received by a grand jury, the reception of incompetent evidence may not be inquired into upon a writ of habeas corpus, or on a motion to set aside the indictment found." *In re Kennedy*, 144 Cal. 634 [78 P. 34, 103 Am.St.Rep. 117, 1 Ann.Cas. 840, 67 L.R.A. 406], is to the same effect. Even the introduction of illegal evidence cannot

be inquired into. (*Morehouse* v. *Superior Court*, 124 Cal.App. 38 [12 P.2d 133].) In any event, appellant is in no position to question this matter, as there was plenty of evidence before the grand jury to warrant the indictment without considering this particular evidence.

Judging from some rather indefinite statements in his petition and his reference to the corpus delicti not having been proved, it would appear that appellant is under the erroneous impression that in spite of his plea of guilty, the trial court should have taken evidence and the crime should have been proved. This contention is unsupported by authorities, and is answered by the following statement of the law in 7 California Jurisprudence 998: "A plea of guilty includes an admission of every element entering into the offense charged and does not raise any issue of fact."

Another point raised by appellant is that he at no time received a copy of the grand jury proceedings until after his incarceration in the penitentiary when, on writing to the clerk of the Supreme Court, a copy of the transcript was sent him. The meagre record sent up here is silent upon the subject. Assuming that he did not receive the transcript as required by section 925 of the Penal Code, it is too late to complain now. That section, after providing for the delivery of the transcript to the defendant by the clerk as soon as it is filed by the reporter, provides "that if the copy of the testimony shall not be served as herein provided the court shall on motion of the defendant continue the trial to such time as may be necessary to secure to the defendant receipt of a copy of such testimony ten days before such trial." The appellant made no such motion nor in anywise complained in the trial court of his failure to receive the transcript. It is too late to do it now.

Appellant contends that after his plea of guilty, the court took no testimony to fix the degree of the crime. Section 1192 of the Penal Code provides: "Upon a plea of guilty of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree." *People* v. *Paraskevopolis*, 42 Cal.App. 325 [183 P. 585], contains an excellent review of the cases on this subject and holds that the section is mandatory and requires that the court must determine the degree in crimes divided into degrees. The record presented by appellant shows that the court did determine the degree as first degree murder. We have had the

380

record augmented by a transcript of the oral proceedings at the time the appellant changed his pleas, and was sentenced. It there clearly appears that the court did take evidence from which it fixed the degree of the murder. Alvin Corrasa, an inspector of police assigned to the homicide detail, testified to the statements made to him by appellant in which appellant said that he had shot and killed the deceased, and gave as his reason for killing the woman that she had been "chasing with other men." Appellant's claim that "the record proves that there has been no testimony taken to set the DEGREE AS FIRST DEGREE MURDER" has no basis whatever.

Apparently appellant is of the impression that he should be permitted to appear in open court and now tell his version of the homicide. Just what he has in mind to tell is not apparent. Of course, such a procedure would neither be legal nor proper. Appellant has had his day in court. The proceedings were fair, proper and legal, and appellant has been legally and justly sentenced.

The order appealed from is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied May 14, 1947.