[Crim. No. 2436. First Dist., Div. Two. May 15, 1947.]

THE PEOPLE, Respondent, v. GORDON K. DARCY,
Appellant.

Gordon K. Darcy, in pro. per., for Appellant.

Robert W. Kenny, Attorney General, David K. Lener, Deputy Attorney General, Leonard R. Avilla, District Attorney, Allan P. Lindsay, Chief Deputy District Attorney, and Vernon E. Perren, Assistant District Attorney for Respondent.

GOODELL, J.—This is an appeal from an order denying appellant's petition for a writ of error *coram nobis* by which he sought to have a judgment of conviction vacated and a new trial granted. The petition, filed in the trial court (see *In re De La Roi*, 28 Cal.2d 264 [169 P.2d 363]) some months after judgment, was presented by appellant himself, and was denied from the bench. A notice of appeal was filed immediately and transcripts of the proceedings from arraignment right through, to and including the hearing on the writ, have been filed herein. We are satisfied the appeal on the writ is properly before the court as an appeal from an order made after judgment (Pen. Code, § 1237).

At the outset it should be noted that at every stage of the proceedings in the superior court, from and including arraignment to and including sentence and commitment (with the possible exception of the entry of the plea) appellant was represented in court by counsel appointed by the court (three different attorneys, successively) and when his petition for the writ was presented an attorney of his own selection was in court and added his own argument to that made by appellant.

The present proceeding is the outgrowth of a prosecution initiated by the filing of an information charging appellant (together with one Wallace) with the robbery on February 27, 1945, of a Safeway Store in San Jose, and (in a separate count) with the grand theft on the same day of a Chevrolet sedan from McKenley-Glans Furniture Company of San Jose.

Appellant was released on April 11, on the deposit of $5,000 cash in lieu of bail. When the case was called for trial on May 14 and 15, appellant was absent. The bail was forfeited and a bench warrant issued. On May 31, he was apprehended at Richmond, California, and on June 14, after the denial of his motion for a continuance, the case went to trial before a jury. The principal facts of that case are as follows: On February 27, 1945, a green 1942 Chevrolet sedan, license number 2-F-7038, belonging to the San Jose furniture house, was

parked in the rear of its store about 4:30 p. m. and when the salesman returned for it about 6:30 p. m. it was missing.

Between 6 and 6:30 p. m. of the same afternoon three women were in the Safeway Store on First Street in San Jose, one of them a customer and the other two employees. The clerks were preparing to close the store. One of them, a checker, was at the cash registers, the other a short distance away. Two men entered the store. The first, later identified by all three women as appellant, wore a dark suit and a grey hat with a black band which was pulled down over his face. He was unshaven. The second man wore a black hat, a dark leather jacket and was unshaven. He was later identified as Wallace who was tried separately.

The first man said to the clerk at the cash registers, according to her testimony, "This is a stick-up, Sister." She saw no gun but testified that he had his hand in his pocket and then, after turning her around, she felt something pressed against her back between her shoulders. According to the testimony he told her to keep still and she would not be hurt. The second man took from the cash register $242 in cash and about $150 in checks.

As they left and got into an automobile parked at the curb, the two women clerks went to the front door and one called out to the other the number of the license plate of the Chevrolet, 2-F-7038.

About 2:30 a. m. on March 1, two police officers were cruising in a radio patrol car in San Francisco and as they drove north on Octavia Street, between Bush and Pine, an automobile came out of Austin Avenue, headed into Octavia. Their suspicions were aroused and they drew up. Two men got out of the automobile, and walked along Octavia Street. One of them, later identified as Darcy, went to the door of an apartment house and had a key out as if to enter. When addressed by one of the officers he said he lived there, but the officer tried the key and it did not fit. He lived, as a matter of fact, several blocks away. The other man, later identified as Wallace, was stopped by the other officer. The automobile from which they alighted was a green 1942 Chevrolet sedan, license number 2-F-7038. The list of "hot cars," which the officers consulted, showed that car listed from San Jose as a stolen car. Darcy wore a grey hat with a black band. Wallace wore a dark leather jacket. Both men were taken into custody and the next day they and the car were turned over

to the San Jose police. The three women identified the two men and the automobile at San Jose police headquarters without hesitation.

Appellant testified that on February 27, at the time when this robbery was committed he was in the hiring hall of the longshoremen's union in San Francisco and did not leave there until after 6 p. m. He admitted he had known Wallace about a year. He testified that when stopped by the two officers in the early morning of March 1, he and Wallace were returning from downtown having traveled by street car.

The testimony of defendant's wife was confined to showing that the defendant was not in need of a shave on the 25th, 26th or 27th of February.

When arraigned for judgment appellant's attorney (who had been appointed by the court) gave oral notice of appeal, and applied for a stay so the appeal could be perfected while the defendant remained in the county jail. The judge explained that such stay could be granted only in the regular way, on a certificate of probable cause, and he remarked further that such writ could not possibly be granted without self-stultification because the evidence of appellant's guilt was "overwhelming."

It is settled law, as shown by numerous authorities—including some of those cited by appellant—that the writ of error *coram nobis* "never issues to correct an error of law nor . . . to redress an irregularity occurring at the trial, such as misconduct of the jury, or of the court, or of any officer of the court (except under circumstances amounting to extrinsic fraud which in effect deprived the petitioner of a trial upon the merits)." (*People* v. *Reid,* 195 Cal. 249, 258 [232 P. 457, 36 A.L.R. 1435].)

Appellant's briefs present the following instances of claimed errors of law, irregularities and misconduct occurring at the trial:

1. That the court erred in admitting in evidence a toy pistol found in the glove compartment of the Chevrolet and the leather jacket said to have been worn by Wallace.

2. That there was prejudicial error in the testimony of the prosecution's witnesses on the subject of appellant's identification; that suggestion had been resorted to both at police headquarters and in court; that the witnesses were mistaken; that some of them gave false testimony; that they made con-

flicting statements as to how they were taken to police head-quarters and what went on there; that the witnesses were coached "as to whom to 'put the finger on.'"

3. Appellant claims that the transcript of the trial "is replete with errors and omissions"; that it has been deliberately changed; that questions and answers were "deliberately left out."

4. Numerous assignments are made of alleged false, erroneous, conflicting and self-contradictory statements of the People's witnesses; arguments are made as to the impossibility of the testimony of some of them.

5. Double jeopardy is claimed in several particulars. The second count was for the theft of the Chevrolet sedan. It was the theory of the prosecution that the defendants took the car from the rear of the furniture store, drove to the Safeway Store, parked it in front, and then drove away in it after the robbery. (a) Appellant argues "included offenses" on the theory that as he was found not guilty of the theft of the Chevrolet, he could not be guilty of the robbery of the store, his contention being "that he could not have committed the offense charged in Count Number One (robbery) without committing the offense charged in count number two (grand-theft)"; further, that the grand theft "was an 'essential' part of the whole which was but one transaction." (b) That "judgment on the escape charge (after revocation of probation and sentence to prison for same) was definitely an evident example of double jeopardy and avoidance of judgment."

6. A deputy clerk read from the register entries showing the forfeiture of bail. Counsel for appellant conceded that flight from the scene of a crime would be admissible but objected that subsequent absence was not, to which the court replied: "Flight from the trial, flight from the court house, abandonment of bail I think is material. . . ." This is claimed to be prejudicial misconduct.

7. Appellant claims that he "was made to appear a habitual criminal of the most vicious kind before the jury" because (a) on cross-examination the district attorney drew from him the admission that he had been theretofore convicted of three felonies, namely, robbery, grand theft and escape; (b) the district attorney asked him, so he claims, "Isn't it a fact that you were previously convicted and sent to San Quentin Prison for the very same charge that you are now being tried for?" This question is one of those claimed to have been deliberately omitted from the record.

8. Appellant claims that while the prior convictions are three in number there was but one prison term served, for the reason that under *one* indictment or information he was charged in two counts with second degree robbery and in another count with grand theft; he was sentenced to three years on each of the three counts, to run consecutively, and as a condition of probation he was to serve one year in the Los Angeles county jail on each of the three counts. After one year he was transferred to the county road camp ''from whence he walked away the second day.'' He was apprehended at once and sentenced to the state prison on the three original counts and, in addition, to serve a consecutive sentence for the escape which, he argues, ''was but a violation of trust.'' Hence he argues that prior to his present confinement he had been arrested only once in his lifetime. His complaint that he was not represented by counsel when his plea was taken revolves around the foregoing circumstances, his point being that with legal representation, or proper advice, he would not have admitted the three priors unconditionally as he did, or at least without the explanation given above.

9. Appellant claims that his conviction ''was brought about through the use of fraud on the part of the prosecution, to-wit, that an agreement was made with him by the prosecution that, if he would admit having been previously convicted, as charged in the information, no word of his previous convictions would be made within the hearing of the jury.'' The record shows that after the jury was sworn the clerk read the information to the jury. It does not show that only that part was read which contained the charges then before the court. Moreover, as we have seen, the appellant was questioned by the district attorney as to the three priors.

10. Appellant complains that he was denied compulsory process. He apparently uses this term in a sense other than its generally accepted sense. As already pointed out, appellant was represented by counsel at every appearance in the superior court except when his plea was taken. The issuance of process was available to him at all times and his attorneys could have compelled it. Appellant apparently means by the denial of compulsory process that the two affidavits of alibi witnesses should have been considered. Those affidavits are dated January 26, 1946, and were filed as exhibits attached

to the application for the writ on April 5, 1946, which was long after the time had expired for a motion for new trial.

11. Appellant contends that there was an irregularity in the reception of the verdict. The record shows that the signed verdict was one of conviction "of Robbery, and find the degree as Robbery in the Second Degree." In directing a poll the court stated that, "As to the first charge of robbery, the verdict was guilty of robbery in the first degree. Call the jury on that. (The Clerk calls the name of each juror, and each juror responds yes.)" In arraigning the appellant for judgment the court stated "The case was tried and submitted and the jury returned with a verdict finding you guilty of a charge of robbery, fixing the degree thereof at second degree and not guilty on a charge of larceny." In delivering the judgment itself the court said "It is the judgment of the Court that you, Gordon K. Darcy, for the offense of which you stand convicted before this Court, to-wit, robbery, fixed at second degree, be imprisoned in the State Penitentiary at San Quentin, for such term as may be lawfully appointed therefor, . . ." Appellant now contends that "if the court holds that the verdict of the jury, as polled individually, is correct, then the judgment as rendered in the trial court is indeed void and appellant is entitled to a new trial on this point alone . . ." as the verdict was in fact second degree.

12. Appellant contends that the sentence "for such term as may be lawfully appointed therefor" was "an illegal and void sentence" because the "punishment must be determined by the court authorized to pass sentence."

13. Akin to the last point is appellant's attack on the legality of the fixing of a prison term by an administrative agency and not by a court.

While in the development of the foregoing points appellant has made several charges of false testimony, nowhere does he allege in his application for the writ, or argue in his briefs, that any false testimony was given with the knowledge or by the procurement of the district attorney. Nowhere does he claim that any fact was suppressed and could now be disclosed, which would have upset the judgment or completely destroyed the evidentiary structure on which the conviction was founded.

Numerous cases have been cited by appellant, and by the respondent as well, on the points which we have just enumerated. For reasons which already appear, we are satisfied

that none of the thirteen points comes within the scope of the writ of *coram nobis* hence we refrain from a discussion of such authorities. To discuss them would be to treat this as an appeal from the judgment of conviction itself, which it is not.

In the recent case of *In re Lindley*, 29 Cal.2d 709 [177 P. 2d 918], the Supreme Court quotes (p. 726) from *People* v. *Reid*, 195 Cal. 249, *supra*. It is not necessary in the instant case to go beyond the Reid case for authority. That was a murder case where the jury returned a verdict of guilty without recommendation. In an application for a writ of error *coram nobis* it was attempted to be shown that the jury would not have reached that conclusion but for information which reached them in the jury room that the Judge had stated that a life sentence would mean no more than about ten years' confinement. The court held on appeal that the writ had been properly denied because such an irregularity was not within its scope. In that opinion the history of the writ and its scope and functions are discussed at considerable length. At pages 258-259, after enumerating the types of cases where the writ has issued, the court says: "It appears that in each case where the writ of error *coram nobis* has issued to vacate a judgment it has been upon the ground that such judgment was predicated upon the assumed existence of a fact or a condition which did not in truth exist and the non-existence of which would have prevented the rendition of the judgment if it had been known. *We find nothing in the authorities to justify the conclusion that this remedy has ever been available for the correction of an irregularity occurring at the trial, such as is here complained of.*" (Emphasis added.)

It must be remembered that upon the "irregularity" there complained of, turned the vital question whether or not Reid was to suffer the extreme penalty.

█ The appellant's contention, which we have numbered 9, that he had admitted the three prior convictions only because the district attorney had promised to say nothing about them before the jury, not only suggests, but asserts, fraud. For that reason it calls for discussion which the other points do not. This point is mentioned for the first time in appellant's opening brief. It was not alleged in the petition for the writ. True it was alleged therein that the district attorney "made illegal and unlawful references to said prior conviction" contrary to section 1025, Penal Code, and that the district attorney violated the trust of petitioner, but nowhere

is it alleged that a promise was made. At the hearing of his application for the writ appellant was represented by counsel of his own selection. Appellant, however, made the principal argument—his counsel supplementing it—and in neither argument was it claimed that the district attorney had made such promise. At that hearing no sworn testimony was given or tendered. The promise finds no support in the record, and does not even appear as an allegation. With respect to the failure to allege this claimed fraud see *People* v. *Reid, supra,* page 260, where the court notes a similar absence of allegation.

Even if the violation of such claimed promise had been found as a fact it would not have necessarily undermined the entire case so as to call for a granting of the writ.

We have already pointed out that there was no denial of compulsory process. However, the appellant deals with the affidavits of Dennis Ocha and W. E. York under this head. Those were alibi affidavits which were clearly within the category of newly discovered evidence. On this point, also, *People* v. *Reid* is directly in point. At page 257 of 195 Cal. the court says: "He [appellant] argues that because the defendant did not discover the facts here relied upon until too late to present them in support of his motion for new trial, the statutory remedy should be deemed 'unavailable' and the common-law remedy should therefore be resorted to. He cites no authority which supports this conclusion and we are convinced that it is not sound." On page 258 the following is quoted from the Mooney case (178 Cal. 525 [174 P. 325]): "The remedy in such case is by motion for a new trial, and if newly discovered evidence is too late in its production, its consideration cannot be brought about under the guise of a motion to vacate the judgment upon the ground of fraud."

Appellant cites fourteen California cases under the general heading "The following citations support appellant's contention that he was entitled to the writ of error *coram nobis* and/or a new trial" without making any particular point, or showing how or in what manner they lend support to his position. None of them supports his contention. Ten of them were cases where petitions to set aside judgments of conviction or for writs of error *coram nobis* were denied, and such denials were affirmed (*People* v. *Mooney,* 178 Cal. 525; *People* v. *Davis,* 187 Cal. 750 [203 P. 990]; *People* v. *Schwarz,* 201 Cal. 309 [257 P. 71]; *People* v. *Mendez,* 28 Cal.2d 686

[171 P.2d 425]; *People* v. *Black,* 114 Cal.App. 468 [300 P. 43]; *People* v. *Deutsch,* 16 Cal.App.2d 121 [60 P.2d 155]; *People* v. *Kretchmar,* 23 Cal.App.2d 19 [72 P.2d 243]; *People* v. *Harincar,* 49 Cal.App.2d 594 [121 P.2d 751]; *People* v. *Lewis,* 64 Cal.App.2d 564 [149 P.2d 27]; *People* v. *Egan,* 73 Cal.App.2d 894 [167 P.2d 766]). One of them (*In re Schenk,* 61 Cal.App.2d 168 [142 P.2d 343]) was habeas corpus not *coram nobis,* where the writ was discharged. One (*People* v. *Egan,* 135 Cal.App. 479 [27 P.2d 412]) involved the dismissal of an appeal. One (*Austin* v. *Lambert,* 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849]) involved the constitutionality of section 170.5, Code of Civil Procedure relating to "peremptory challenges" of judges, and one (*People* v. *Gilbert,* 25 Cal.2d 422 [154 P.2d 657]) reversed an order which attempted to modify to life imprisonment judgments imposing the death penalty, which judgments had been affirmed on appeal.

Neither *People* v. *Bevans,* 19 Cal.App.2d 288 [65 P.2d 92] nor *People* v. *Stangler,* 18 Cal.2d 688 [117 P.2d 321] is in point.

The appellant seeks this writ on general grounds. He says, "a case showing such evident untrue, erroneous and fraudulent testimony should be reversed, and that law and justice require that he be given his day in court before imposing an illegal sentence such as that which has been imposed upon him as a result of aforesaid denial of the due process of the law, equal protection of the law, and the same rights and privileges granted to others in like cases." Elsewhere he says, "Where prejudicial errors are evident in the record, and the reviewing Court has jurisdiction, there should be no delay in the correction thereof; especially so when a miscarriage of justice has resulted therefrom. What the remedy is, called makes no great difference; what is essential is that there still is a remedy, different in form though it may be, in situations where there would be great injustice if the law gave no assistance." With respect to such general contentions the Supreme Court has said, "The maxim, 'for every wrong there is a remedy' (Civ. Code, sec. 3523) is not to be regarded as affording a second remedy to a party who has lost the remedy provided by law through failing to invoke it in time—even though such failure accrued without fault or negligence on his part. This is made clear by the cases of *People* v. *Mooney, supra,* and *People* v. *Superior Court,* 190 Cal. 624 [213 P. 945]." (*People* v. *Reid, supra,* p. 260.) And "The annul-

ment of said portions of the judgment is attempted to be justified on the theory that plenary and almost omnipotent power is vested in courts by virtue of the ancient writ of *coram nobis,* a writ which has become practically obsolete by the extended powers of the writ of *habeas corpus* and the adoption of our modern procedure generally, except in the most rare of instances.'' *(People* v. *Lumbley,* 8 Cal.2d 752 [68 P.2d 354].) All the cases point out that the scope of the writ is extremely narrow and that it is anything but a catch-all or omnibus remedy. In recent weeks two appeals from orders denying writs of error *coram nobis,* came before the courts where, as in this case, the points relied on were such as might have been raised on an appeal from the judgment of conviction or from the denial of a new trial. In each of them the order was affirmed. *(People* v. *Tate,* 78 Cal.App. 2d 894 [178 P.2d 470]; *People* v. *Dale, ante,* p. 370 [179 P.2d 870].)

In the main case of *People* v. *Darcy* appellant's counsel gave oral notice of appeal from the judgment of conviction in open court immediately after sentence was pronounced on June 18, 1945. At that time a written notice of appeal was required by rule 31 which had become effective on July 1, 1943. There was, therefore, no appeal taken from the judgment. No motion for new trial was made. For these reasons the judgment of conviction has long since become final and, as said in *People* v. *Reid,* the writ sought does not afford ''a second remedy to a party who has lost the remedy provided by law through failing to invoke it in time.''

The order is affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 12, 1947.