[Civ. No. 13597.  First Div., Div. One.  May 10, 1948.]

In re CARL LEE DYER, for *Writ of Coram Nobis*. CARL LEE DYER, Appellant, v. ELFIDA HILL, Respondent.

Waldo F. Postel for Appellant.

John L. Garaventa for Respondent.

WARD, J.—This is an appeal from an order of the superior court denying appellant's motion for a "writ of *coram nobis.*" The controversy grows out of a marriage and subsequent divorce. Chronologically the following facts appear: The petitioner married respondent, whose age at the time appears in the record to have been 17 years, on August 5, 1936; they separated on August 8, 1936; as issue of the marriage there is one child; a divorce action was filed by respondent and served upon the husband on June 22, 1938; defendant defaulted. The court on July 20, 1938, granted an interlocutory decree of divorce to the wife on the ground of wilful desertion and ordered the husband to pay $20 per month for the support of their child, whose custody was awarded to the mother; August 2, 1939, the final decree was filed; December 20, 1941, the parties stipulated, with the approval of the court, that the order providing for payments for the child's support during such time as the father might remain in the armed forces of the United States, should be vacated; the record indicates that

the father was released from the United States Navy in September, 1945. In an affidavit signed by the mother on June 3, 1947, it is averred that there is due and owing from the father for the support and maintenance of the minor child the sum of $870.

In the present proceeding an application for a "writ of *coram nobis*" dated April 10, 1947, is in the form of a notice that on a certain day and hour in the designated court the father would move said court for a "writ of *coram nobis*" to set aside that portion of the interlocutory and final decree which ordered him to pay for the maintenance and support of the child. The notice asserted as a ground for the motion that the father, petitioner herein, was not in fact the father of the child, and certain affidavits were filed in support of his "petition."

Portions of the father's affidavit, dealing with details not previously mentioned, set forth the following: "Affiant alleges that he married the said plaintiff because at said time the said plaintiff was pregnant, and affiant herein was accused by said plaintiff and the District Attorney of the County of Alameda, State of California, of being the father of the said unborn child. Affiant alleges that he married the said plaintiff solely by reason of threats of criminal prosecution if he did not do so, and but for said threats he would not have married the said plaintiff.

"Affiant alleges that at the time of the said marriage said plaintiff was a minor, and plaintiff threatened to prosecute for rape if he did not marry her, and at said time informed affiant that the only reason she wanted the said marriage ceremony performed was to have a name for the child.

"Affiant alleges that prior to the said marriage affiant received a visit from the Sheriff of the County of Alameda, State California, who came to the home of affiant and threatened said affiant with arrest and informed affiant that he must go to the District Attorney's office in Oakland, Alameda County, California, to face criminal charges. At said time, plaintiff was eighteen (18) years of age.

"Affiant alleges that at the time of the marriage of the parties hereto, affiant was also a minor, and in that behalf alleges that he was born on the 28th day of July, 1916.

"Affiant alleges that at the time of the said marriage and during all of the time of the divorce proceedings and up to the physical examination of affiant by Dr. Lewis Michelson,

as hereinafter set forth, affiant believed that he was the father of said child.

"Affiant alleges that after the said marriage neither of the parties hereto cohabited, and on or about the 8th day of August, 1936, separated and ever since said separation have lived separate and apart.

"Affiant alleges that prior to the commencement of said action for divorce, to wit: on May 22, 1937, affiant was arrested for alleged failure to provide for the minor child of plaintiff, and affiant spent thirteen days in jail, and by reason of threats and fear entered a plea of guilty and subsequently and on the 4th day of June, 1937, affiant was given two years' probation and ordered to report to the probation officer and pay not less than $15.00 per month for the support of said child. . . .

"Affiant alleges that by reason of the threats made against affiant, his arrest, his being in jail, and all of the circumstances set forth herein, affiant did not contest the said action for divorce. . . .

"Affiant alleges that he did not contest or appear in said action because of his fear of criminal prosecution and jail, and for further reason that he was still on probation and believed that if he took any step contrary to the wish and will of said plaintiff, either in regard to said divorce proceedings or the support of said child, it would be held a violation of said probation, and that he would be forthwith thrown into jail. . . .

"Affiant alleges that at all the dates and times herein above mentioned he believed the accusation that he was the father of said child." The affiant thereupon reproduced certain averments contained in an affidavit of a duly licensed physician and surgeon. The appellant claims that he could not have been the father of the child, and that to compel him to support the said child is unconscionable.

The affidavit of the physician and surgeon contained the following: "Affiant alleges that after a thorough physical examination of said Carl Lee Dyer, etc., and a microscopical examination of the semen, as well as the findings at operation he is of the opinion and therefore avers that said Carl Lee Dyer, etc. could never have impregnated a woman, for the reason that it would have been impossible, as most of the tube that provides the passageway for the transport of the spermatozoa from the testicles to the penis in the physical

structure of said Carl Lee Dyer, etc. is congenitally absent and never developed. At operation this anomalous condition was found to be present on both sides.

"Affiant alleges that the said physical condition and said impossibility of impregnating a woman existed in said Carl Lee Dyer, etc., from birth and has been continuous up to the present time."

It was stipulated by the respective parties that the motion for "writ of *coram nobis*" be continued four weeks. At that time the mother filed an affidavit to the effect that she was born May 28, 1919; that the appellant was born July 28, 1914; that a marriage ceremony was performed; that a child was born; that a divorce complaint was filed by her; that an interlocutory decree was made and entered on the grounds of wilful desertion, which provided that the custody of the child be awarded to the mother and that the appellant pay $20 per month for the support of the child. A final decree was filed containing similar provisions. The dates of filing the various pleadings do not appear to be questioned.

There is an averment in the mother's affidavit that at the time she married the petitioner herein she was pregnant and that the pregnancy was caused by petitioner; that prior to such conception she had never had sexual intercourse with any man. Further, it is alleged that petitioner prior and subsequent to the birth of the child in question was physically capable of being the father of a child. The mother denied that the marriage was the result of threatened criminal proceedings, coercion or duress on her part or of any person, and that petitioner heretofore had "always admitted and acknowledged that he was the father of the [child]"; that for several months after the interlocutory decree petitioner had paid for the support and maintenance of the child, and that in any subsequent support proceedings petitioner was not threatened but merely directed to pay a stated amount for its support.

During all of the period, namely, from August 1936 until December 1946, no suggestion was made that petitioner herein was not the father of the child. Respondent's affidavit further sets forth that petitioner did not exercise "in due time all reasonable diligence" in ascertaining "whether he was physically capable of being the father of a child" and that petitioner "is not entitled to a writ of *coram nobis* at this late date."

The record shows that "Oral argument is presented by respective counsel and the petitioner's memo of additional points and authorities is entered and filed." Upon submission of the matter the court "orders that the motion for writ of *coram nobis* is denied."

The writ of error *coram nobis* is issued to correct an error of law that is based upon some issue of fact. (*People* v. *Reid*, 195 Cal. 249 [232 P. 457, 36 A.L.R. 1435]; *People* v. *Darcy*, 79 Cal.App.2d 683 [180 P.2d 752]; *People* v. *Dale*, 79 Cal.App.2d 370 [179 P.2d 870].) Whatever may be said about the inception of the writ, the recognized present purpose is to correct an error of fact which was unrecognized prior to the final disposition of the proceeding. It is not intended as a means of revising findings based on known facts, or facts that should have been known by the exercise of ordinary and reasonable diligence. (*People* v. *Reid, supra*; *People* v. *Mooney*, 178 Cal. 525 [174 P. 325]; *People* v. *Cabrera*, 7 Cal.2d 11 [59 P.2d 804]; *In re Paiva*, 31 Cal.2d 503 [190 P.2d 604].) To correct an error of fact it is often necessary to modify a legal ruling, order, judgment or decree, but it is the fact and not the law that is the subject of change.

For many years reviewing courts of this state have assumed that a proceeding in the nature of *coram nobis* is appealable. In recent years it has been decided that an order made by a trial court for relief in the nature of the writ of error *coram nobis* is appealable. In *People* v. *Gilbert*, 25 Cal.2d 422 [154 P.2d 657], the plaintiff, the "People," appealed. In that case it is said (p. 444): "Defendants' contention that the People have no right of appeal from the order of the trial court setting aside or modifying its previous judgments of death is without merit. The question was before this court in *People* v. *Lumbley, supra*, 8 Cal.2d 752, 761 [68 P.2d 354], and was decided adversely to defendants' position. The effect of the order here appealed from was to modify substantially the judgments originally entered. Such an order, obviously, is one 'made after judgment, affecting the substantial rights of the people' and is within the purview of section 1238(5) of the Penal Code." The Gilbert case refers to the right of the People in a criminal case to appeal. *In re Paiva, supra*, was "in the nature of a writ of error *coram nobis*," in which defendant appealed. Using *People* v. *Gilbert, supra*, and other cases as authority it was held that the defendant had the right of appeal. A

defendant's right to appeal in a criminal case generally is based on Penal Code, section 1237, subdivision 3, which provides that "An appeal may be taken by the defendant: . . . From any order made after judgment, affecting the substantial rights of the party." This is based upon the assumption, so far as a writ of error *coram nobis* is concerned, that a lower court has changed or refused to change some order based upon facts not known at the time of trial.

*People* v. *Gilbert, supra,* involved an attempt to modify to life imprisonment a judgment imposing the death penalty. This was a legal question based upon facts. At page 439 the court said: "The People, with more regard for established processes, classify the defendants' motions as constituting applications for relief in the nature of writs of error *coram nobis.* We are in accord with this classification." *In re Paiva* raised the question whether a party appealing from the denial of a writ of error *coram nobis,* heard approximately 10 years or more after conviction, was entitled to be furnished a transcript and legal record. In the original Paiva decision the record shows that Paiva was convicted of two charges of murder and one charge of rape.

In the present case the purpose is to set aside that portion of the interlocutory and final decrees directing the father to pay a monthly sum for the support and maintenance of the child. The application is based upon a claim that a certain fact, assumed during the trial to exist, had in fact no such existence.

The writ of error *coram nobis* may be used following judgment in a civil proceeding. In *Phelan* v. *Tyler,* 64 Cal. 80, 82-83 [28 P. 114], it is said: " '. . . and while the court ought to cease to exercise its jurisdiction over a party when he dies, its failure to do so is an error to be corrected on appeal if the fact of the death appears upon the record, or by writ of error *coram nobis* if the fact must be shown *aliunde.*' (Freeman on Judgments, 153.)" Hence a proceeding for writ of error *coram nobis* constitutes a novel means of attacking a judgment.

In *King* v. *Superior Court,* 12 Cal.App.2d 501, 511 [56 P.2d 268], it is said: "The usual and ordinary ways in which a judgment may be set aside by a court rendering it are: (1) by motion for new trial; (2) by motion made in due time under section 473 of the Code of Civil Procedure; (3) by motion at any time when the judgment is void on its face; (4) by suit in equity where the judgment is regular

in form but void for extrinsic fraud or other proper causes.''

The writ of error *coram nobis* should not be used if some other remedy is available. It could become a hindrance to the disposition of problems of merit were trifling and frivolous questions only presented. In *People* v. *Darcy,* 79 Cal.App.2d 683, 691-692, 693 [180 P.2d 752], the court said: ''Appellant cites fourteen California cases under the general heading 'The following citations support appellant's contention that he was entitled to the writ of error *coram nobis* and/or a new trial' without making any particular point, or showing how or in what manner they lend support to his position. None of them supports his contention. Ten of them were cases where petitions to set aside judgments of conviction or for writs of error *coram nobis* were denied, and such denials were affirmed (*People* v. *Mooney,* 178 Cal. 525 [174 P. 325]; *People* v. *Davis,* 187 Cal. 750 [203 P. 990]; *People* v. *Schwarz,* 201 Cal. 309 [257 P. 71]; *People* v. *Mendez,* 28 Cal.2d 686 [171 P.2d 425]; *People* v. *Black,* 114 Cal.App. 468 [300 P. 43]; *People* v. *Deutsch,* 16 Cal.App.2d 121 [60 P.2d 155]; *People* v. *Kretchmar,* 23 Cal.App.2d 19 [72 P.2d 243; *People* v. *Harincar,* 49 Cal.App.2d 594 [121 P.2d 751]; *People* v. *Lewis,* 64 Cal.App.2d 564 [149 P.2d 27]; *People* v. *Egan,* 73 Cal.App.2d 894 [167 P.2d 766]). One of them (*In re Schenk,* 61 Cal.App.2d 168 [142 P.2d 343]) was habeas corpus, not *coram nobis,* where the writ was discharged. One (*People* v. *Egan,* 135 Cal.App. 479 [27 P.2d 412]) involved the dismissal of an appeal. One (*Austin* v. *Lambert,* 11 Cal. 2d 73 [77 P.2d 849, 115 A.L.R. 849]) involved the constitutionality of section 170.5, Code of Civil Procedure relating to 'peremptory challenges' of judges, and one (*People* v. *Gilbert,* 25 Cal.2d 422 [154 P.2d 657]) reversed an order which attempted to modify to life imprisonment judgments imposing the death penalty, which judgments had been affirmed on appeal.'' ''All the cases point out that the scope of the writ is extremely narrow and that it is anything but a catch-all or omnibus remedy.'' (See 97 Am.St.Rep., pp. 369-370; 49 C.J.S. 570; *Williams* v. *Yelvington,* 103 Fla. 145 [137 So. 156].) *Coram nobis* is not generally used to retry issues of a case previously determined (*People* v. *Reid, supra*), but is available merely to declare as false a fact previously decided to be true.

The appellant father contends ''That the petition or motion for writ of *coram nobis* sets forth sufficient facts which if true entitled appellant to the granting of the writ and that

in view of the fact that no demurrer or similar pleading was filed, a hearing should have been had upon the issues. The truth or falsity of the affidavits submitted has never been determined.'' It was held in *People* v. *Block,* 134 Cal.App, 217, 218 [25 P.2d 242]: ''It is contended by appellant that the various affidavits above mentioned had the effect merely, *pro* and *con,* of pleadings, as in a civil action, and that the trial court erred in making its order without taking evidence under the issues claimed to have been presented by them. We are referred, however, to no authority announcing such a doctrine. On the contrary, the opinion in *People* v. *Perez,* 9 Cal.App. 265 [98 P. 870], plainly shows that it is proper to hear such an application on affidavits.''

Considering the circumstances of the marriage herein, the youth of the appellant and the period of his service in the army, this court does not find it necessary to support its conclusion by giving application to the defense of laches in order to sustain the trial court, though the affidavit of the mother is perhaps sufficient to present that issue.

█ The writ, like other writs, must be in writing, but the application therefor may be by formal petition, in which case the usual pleadings are available to respondent to be followed by a hearing appropriate to the issues raised. (49 C.J.S. 568.) It appears that in many instances the application has been by notice to the parties interested that on a specified day and hour in a certain tribunal having jurisdiction of the subject matter the applicant will seek the relief by issuance of the writ to right the alleged wrong. The application may be based upon the record or supported by affidavits. In the present proceeding the appellant proceeded by notice of motion and affidavits.

When affidavits are relied upon to obtain the issuance of a writ of error *coram nobis,* reply affidavits if worthy of belief may be sufficient, unless the court deems otherwise, upon which to base denial of the application. (*People* v. *Block, supra.*)

█ It is not necessary to restate the substance of the mother's affidavit or to specifically relate all of the inferences that the trial court could draw from the record. The affidavits are all the evidence that may be considered on this appeal. By its order it must be assumed that the trial court found the affidavits filed by the appellant to be untrue. (*People* v. *Block, supra.*) Under such conditions this court is not in a position to order a reversal. It is said in *Brainard* v. *Brain-*

*ard,* 82 Cal.App.2d 478, 480 [186 P.2d 990]: ''In all matters in which an issue is tried upon affidavits it is the rule that those favoring the contentions of respondent establish not only the facts stated therein but also all facts which may be reasonably inferred therefrom. (*Doak* v. *Bruson,* 152 Cal. 17, 19 [91 P. 1001]; *Kettelle* v. *Kettelle,* 110 Cal.App. 310, 313 [294 P. 453].)''

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.