Oscar Nieves González, Petitioner, v. James M. Jones, Acting Warden of the Insular Penitentiary, Defendant.

No. 468. Argued March 5, 1951.—Decided March 20, 1951.

Santos P. Amadeo, Rafael V. Pérez Marchand, René Muñoz Padín, and José Efraín Cabrera Rivera, for petitioner. Víctor Gutiérrez Franqui, Attorney General, and J. Rivera Barreras, Fiscal of the Supreme Court, for defendant.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

The petitioner claims that the sentence of life imprisonment he has been serving and which was imposed on him upon his plea of guilty of murder in the first degree, is null and void on the ground that the District Court of Mayagüez did not comply with § 310 of the Code of Criminal Procedure, 1935 ed., equivalent to § 1192 of the Penal Code of California, which provides that "Upon a plea of guilty of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree."[1]

---

[1] Section 1192 of the Penal Code of California was amended in 1949 as follows:

 The facts are not in issue. On May 10, 1949, when the case of *The People of Puerto Rico* v. *Oscar Nieves González and Justo Nieves González* for a crime which the district attorney designated "murder" (without specifying the degree) was called for trial in the lower court, the defendants, who were represented by counsel, waived a trial by jury and requested that the case be tried by the court. The court so ordered. The district attorney then moved for the dismissal of the case against Justo Nieves González on the ground that he would use Nieves González as a witness for the prosecution. The court agreed. Then the following occurred:

"District Attorney: May it please the Court. The People of Puerto Rico states now that it shall proceed with the case of Oscar Nieves González for the crime of murder in the first degree.

"Hon. Judge: Then the case against Oscar Nieves González will proceed for the crime of murder in the first degree since, the information being for murder without specifying the degree, the district attorney chooses at this time to accuse Oscar Nieves González of murder in the first degree.

"Then, arraignment of Oscar Nieves González for murder in the first degree. (The clerk arraigns the defendant.)

"Hon. Judge: Plea?

Mr. Palés Matos [counsel for defendant]: Guilty.

"Hon. Judge: Defendant, did you hear and understand well the plea of guilty of murder in the first degree entered for you by your attorney?

"Defendant: Yes, sir.

"Hon. Judge: Have you anything to say to the court against that plea of guilty?

"Defendant: No, sir.

"Hon. Judge: Have you been threatened in order that you enter a plea of guilty?

"Defendant: No, sir.

---

"Upon a plea of guilty, or upon conviction by the court without a jury, of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree. Upon the failure of the court to so determine, the degree of the crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

"Hon. Judge: Have you been made any offer?

"Defendant: No, sir.

"Hon. Judge: Have you been given something in exchange for a plea of guilty?

"Defendant: No, sir.

"Hon. Judge: Are you sure that you enter freely that plea of guilty?

"Defendant: Yes, sir.

"Hon. Judge: Do you know that by pleading guilty you admit having committed this act?

"Defendant: Yes, sir.

"Hon. Judge: Did you really commit it?

"Defendant: Yes, sir."

The court immediately said:

"In view of the plea of guilty entered here by the defendant Oscar Nieves González and considering that it is an act of his free and spontaneous will and that the defendant is aware of the scope of said plea, the same is admitted and consequently the court finds the defendant Oscar Nieves González convicted on confession of the crime of murder in the first degree."

At the request of the defendant the pronouncement of sentence was postponed until May 23, 1949 on which date the court, upon passing said sentence, proceeded in this manner:

"Hon. Judge: At the hearing of the 10th of the current month of May the defendant Oscar Nieves González entered a plea of guilty of the crime of murder in the first degree, which plea was admitted by the court after the proper investigation, the defendant having been convicted on confession of the crime of murder in the first degree.

"At the defendant's request the pronouncement of sentence was set for today.

". . . . . . . .

"The facts with which this defendant is charged took place in Las Marías, within this judicial district, on or about December twenty-sixth, nineteen hundred and forty-seven, and consist in that the defendant, *according to his plea of guilty*, on the aforesaid date, did unlawfully and wilfully, with malice, premedita-

tion, and with the firm and decided intent of unlawfully killing him, showing a wicked and evil heart, assault and batter with a a rifle, which is a deadly weapon, the human being Juan Ríos Valentín, inflicting on him a bullet wound of a serious nature which was the cause and did cause the death of the aforesaid Juan Ríos Valentín on December 27, 1947.

"Has the defendant any legal impediment to offer the court by virtue of which judgment should not be pronounced at this moment?

"Mr. Palés: None, in our judgment. The defendant will say if he has any impediment.

"Hon. Judge: Is the defendant not ready to be sentenced?

"Mr. Palés: He is ready, Your Honor.

"Hon. Judge: Hence, the court sentences the defendant Oscar Nieves González to life imprisonment in the insular penitentiary where he must remain constantly for the term of his natural life. Without costs.

"He now remains under the custody of the marshal." (Italics ours.)

We must presume that our Legislature adopted § 310 of the Code of Criminal Procedure from § 1192 of the Penal Code of California with the judicial construction placed upon it in said State prior to such adoption. *Vázquez* v. *Font*, 53 P.R.R. 252; *Marchán* v. *Eguen*, 44 P.R.R. 396; *Legarreta* v. *Treasurer*, 55 P.R.R. 20; *Padilla* v. *Vidal*, 71 P.R.R. 483.

Prior to the approval of § 1192 of the Penal Code of California in the year 1872, there existed in said State § 21 of the Act concerning crimes and punishments approved April 19, 1856, which, after defining murder in the first degree and murder in the second degree and providing that the jury shall, when the trial is by jury, designate the degree of the murder in their verdict, continued: ". . . but if such person shall be convicted on confession in open court, the court shall proceed by examination of witnesses to determine the degree of the crime, and give sentence accordingly." We have taken the foregoing quotation from *People* v. *Noll*, 20 Cal. 164, 165–6 (1862), in which, construing said § 21, it was decided: (1) that the proceeding to determine the degree of the crime of

murder after a plea of guilty before the court, is not a trial nor has the defendant any right to have that question determined by a jury; (2) that the examination of witnesses need not be at the same time or on the same day on which the plea of guilty is entered, nor is it necessary that any time should elapse between the determination by the court of the degree of the crime and the pronouncement of judgment; and (3) that the determination of the degree of the crime need not be made in any particular form.

The case of Noll is important because it was cited with approval by the Supreme Court in *Hallinger* v. *Davis*, 146 U. S. 314 (1892) and, construing a certain provision of the Code of Criminal Procedure of New Jersey similar to that contained in § 21 of California, *supra*, it was decided therein that statutes of like import do not violate the Fourteenth Amendment of the National Constitution to the effect that no state shall deprive any person of life, liberty, or property without due process of law, even though the court determines that the degree of the crime of murder is in the first degree and that it entails the death penalty.

The first case decided by the Supreme Court of California construing § 1192 of the Penal Code was *People* v. *Jefferson*, 52 Cal. 452 (1877), in which, although involving the crime of burglary, the court referred to murder cases and decided that a like duty is cast upon the court by said Section as that imposed by § 1157 of the same Code upon the jury in providing that "Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of crime of which he is guilty."[2] It was further held that the lower court erred in not fixing the degree of the crime when the defendant pleaded guilty.

The case of *People* v. *Jefferson*, *supra*, was ratified by the Supreme Court in *People* v. *Bellon*, 182 Pac. 420 (1919), which was a murder case, it being said:

---

[2] Section 284 of our Code of Criminal Procedure corresponds to § 1157 of California.

"Under our practice it is *essential* to proper pronouncement of judgment in the event of a plea of guilty of a crime distinguished or divided into degrees, *such as murder or burglary,* that the court first determine the degree. Sec. 1192, Pen. Code; *People* v. *Jefferson,* 52 Cal. 452." (Italics ours.)

The language used by the District Court of Appeals, Third District of California in *People* v. *Paraskevopolis,* 183 Pac. 585 (1919) has made this a leading case, inasmuch as it is cited throughout all the decisions construing § 1192. That case also involved an indictment of murder and the defendant entered before the court a plea of guilty of the crime of murder in the first degree and was sentenced to life imprisonment without the court hearing evidence to determine the degree of the crime. At page 586 it was said: "It is to be noted that the language of the foregoing section is upon its face peremptory and we doubt not that the Legislature so intended it. Indeed, the section has been so construed by the Supreme Court." After citing the cases of Jefferson and Bellon, *supra,* as well as *People* v. *Chew Lan Ong,* 141 Cal. 550, 75 Pa. 186 (1904), in which it was decided that pursuant to the decision in *People* v. *Noll, supra,* the proceeding specified in § 1192 was constitutional and that the mode of proceeding thereunder is by presenting evidence in order that the court may determine the degree of the crime, the court expressed itself as follows, pp. 586–7:

"We do not understand, though, that the proposition that section 1192 is mandatory is disputed. The position of the Attorney General is, however, not that the plea of guilty by the defendant to murder of the first degree is equivalent to an adjudication or determination of the question as to the degree of the crime of which he is guilty, but that, as here, a plea by a defendant of guilty of murder of the first degree leaves nothing for the court to do but to accept that plea and act upon it,[3] as it would in any other case where a simple plea of guilty would necessarily embrace within its scope every essential element or

---

[3] This is the position adopted by the *Fiscal* of this Court in the present case.

fact involved in the crime; or the contention might be that, having pleaded guilty, not only to the crime of murder, but also to the first degree thereof, the defendant thereby waived the right to have determined by the court, before passing sentence, of which of the two degrees of murder he was guilty.

"We are of the opinion, however, after a careful consideration of section 1192, that it is essential in any event, in every case where the crime charged is divided into degrees, and a plea of guilty has been interposed to such charge by the accused, that the court, as a prerequisite to the pronouncement of judgment of sentence, should first determine the degree and that in the absence of such determination in such a case, any attempted sentence is illegal and invalid."

Further on it is stated as follows:

"We are not, however, to be understood as holding that the voluntary admission by the defendant, whether in the form of a mere statement or in that of a plea to the charge, that he is guilty of a particular degree of a crime divided into degrees, will not constitute a sufficient evidentiary predicate for the determination by the court of the question of degree, notwithstanding that such statement may not be, or such plea is not, given under oath. To the contrary, we think a voluntary statement or plea by the accused would be sufficient to uphold the determination by the court of the degree. But, even in such case, there must nevertheless be a determination by the court of the degree. In brief, there must be such a determination regardless of the character or nature of the evidence by which the fact is ascertained."

As we have said, this case has been cited and applied innumerable times throughout the decisions on the subject matter.[4] For example, in *Ex parte Hammond*, 74 P. 2d 308 (D.C.A. 3 D. Cal., 1937), in which the information contained, as in the case at bar, the elements of the crime of murder in the first degree and the defendant entered a plea of guilty, the court after citing, among others, the case of *Paraskevopolis*, *supra*, said at p. 310:

---

[4] See: *People* v. *Bayne*, 28 P. 2d 1068 (D.C.A. 3, 1934); *People* v. *Méndez*, 161 P. 2d 929 (Cal., 1945); *People* v. *Dale*, 179 P. 2d 870 (D.C.A. 1, Cal., 1947); *People* v. *Verdier*, 214 P. 2d 433 (D.C.A. 1, Cal., 1950).

"That there are sufficient facts disclosed by the record, including the information and the plea of the petitioner, to justify the trial court in fixing the degree of the offense, does not obviate the requirement of the Code that such degree must be fixed prior to the pronouncing of sentence."

It is true, as the *Fiscal* points out in his brief, that there are California cases holding that when the defendant pleads guilty to a charge of burglary committed in the nighttime or of robbery armed with a deadly weapon (both considered in the first degree), the court does not err in failing to determine the degree of the crime, for defendant's admission that he committed the offense under the circumstances alleged in the information is sufficient. See *Ex parte Haase*, 90 Pac. 946 (C. A. 3, Cal. 1907) and *People* v. *Mendietta*, 226 P. 2d 34 (D.C.A. 1, Cal., 1951). We would apply said rule if the charge of murder in the first degree herein were based on the ground that it had been committed "by means of poison, lying in wait [or] torture" or "in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem," contemplated by § 201 of the Penal Code, 1937 ed., for if he admits having caused death under any of those circumstances the murder necessarily is in the first degree. We consider that the situation presented by said cases is easily distinguishable from that in which the information for murder in the first degree alleges facts which later, according to the evidence, might be found to constitute murder in the second degree. The situation is also different when the defendant enters a plea of guilty of murder in the second degree and the court accepts it, for the latter need not determine anything as to a lesser degree of the crime than that of which the defendant is found guilty, since, as decided in *People* v. *Grillo*, 30 N. W. 2d 284 (Mich., 1948), cited by the *Fiscal*, manslaughter is distinguished from murder in that the element of malice, express or implied, is absent, it not being required, therefore, that the court hear evidence in these cases to determine whether the crime could have been manslaughter.

Said rule is applicable to all those cases where the defendant has entered a plea of guilty of murder in the second degree.

It is true, also, as contended by the *Fiscal*, that in California § 190 of the Penal Code requires that in cases of murder in the first degree in which the defendant enters a plea of guilty, the court must determine—just as the jury does when it finds him guilty after the trial—whether the penalty shall be death or life imprisonment and that for said reason the court is required to take evidence before imposing the penalty. But the fact is that notwithstanding the provision of § 190, the case law also requires said evidence to determine the degree of the crime, and that is why in the case of Paraskevopolis, *supra*, it was said at p. 587:

> "We may, with perfect propriety, add by way of suggestion, that, in cases of murder, the proper course to pursue where an accused has pleaded guilty to a charge of murder is to take evidence upon the question of the degree of said crime of which he is guilty, and this should be done for a twofold reason, viz.: (1) to ascertain and determine the degree of the crime. (2) Where the accused pleads guilty of murder, for the just and proper exercise by the court of its judgment or discretion as to whether the penalty shall be that of death or imprisonment for life. Pen. Code, § 190. . ..."

██ The *Fiscal* of this Court finally argues that since the District Attorney stated that he would continue the case as one of murder in the first degree and the defendant entered a plea of guilty of said crime, the court was not required to determine the degree of the crime. He is mistaken. Although in *The People* v. *Boria*, 12 P.R.R. 166, we held that the determination of the degree of the crime is not properly a function that the *Fiscal* should make in the information since such determination pursuant to the evidence is incumbent on the jury under § 284, *supra*, we also held at p. 171 that should the district attorney "determine the degree of the crime in the information, as in this case, such fact does not constitute a material defect or vice therein, inasmuch as the jury has the

right to accept or reject the degree fixed in said information, according to the result of the evidence heard at the trial." In like manner, the court, in a case like the one at bar, may or may not accept the degree of the crime fixed by the district attorney according to the result of the evidence heard after the defendant pleaded guilty.

The judgment rendered on May 23, 1949 by the District Court of Mayagüez in criminal case No. 16,082, The People of Puerto Rico v. Oscar Nieves González, murder in the first degree, must be set aside, and the District Court of Puerto Rico, Mayagüez District, must enter judgment in said case after complying with § 310 of the Code of Criminal Procedure as construed herein.

Mr. Chief Justice De Jesús did not participate herein.