[Crim. No. 1234. Fifth Dist. Jan. 19, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY LEE BRADY, Defendant and Appellant.

COUNSEL

Allen Ruby, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James and Doris H. Maier, Assistant Attorneys General, Eddie T. Keller, Nelson P. Kempsky and G. Michael Gates, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GARGANO, J.—In October 1971, petitioner moved the Superior Court of Stanislaus County to set aside three judgments of conviction entered in that court. His motion, entitled "Motion to vacate and Set Aside Judgment and/or Petition for Writ of Error Coram Nobis," was denied; the judgments petitioner was seeking to set aside had been affirmed on appeal, and the court below was without jurisdiction to act. (Pen. Code, § 1265.) Petitioner appealed, and we have treated the appeal as an original proceeding in this court for a writ of error *coram vobis;* the writ of *coram vobis* is essentially identical to the writ of *coram nobis* except the latter is addressed to the court in which the petitioner was convicted. (*In re Lindley,* 29 Cal.2d 709 [177 P.2d 421].)

The chronology is this:

In the year 1969 petitioner was arrested on a number of felony charges and lodged in the county jail. While awaiting preliminary hearing on the charges, petitioner escaped; he was captured a short time later.

On July 30, 1969, petitioner, by information, was charged with one count of burglary, two counts of receiving stolen property, one count of possession of a concealable weapon, one count of assault upon a police officer, and one count of theft of a firearm from an officer. By separate information he was also charged with escape from the county jail and several other felonies allegedly committed during the escape. Petitioner pled not guilty and not guilty by reason of insanity to all counts. Then, the court ordered medical examinations of petitioner to determine his sanity as of the time of the offenses.

On August 31, 1969, petitioner escaped from the Stanislaus County jail for the second time; he was apprehended one month later.

On October 24, 1969, petitioner was charged with the second escape, two counts of kidnaping, armed robbery, kidnaping for the purpose of robbery and burglary. Petitioner again entered pleas of not guilty and not guilty by reason of insanity to all counts. As in the preceding cases, two psychiatrists were appointed to examine petitioner and to report to the court on his sanity as of the time of the offenses.

Petitioner's jury trial on the charges arising out of the first escape, case No. 104162, commenced on October 27, 1969; he was found guilty of the escape and of two counts of armed robbery; the jury found petitioner sane at the time the offenses were committed. He was sentenced to state prison on all counts, the sentences to run concurrently to each other.

Petitioner's trial on the felony charges for which he was initially arrested, case No. 104188, commenced November 3, 1969; he was found guilty of two counts of receiving stolen property, one count of a felon in possession of a firearm, and one count of battery on a peace officer. Petitioner withdrew his plea of not guilty by reason of insanity, and he was sentenced to state prison on the battery and the firearm charges, the sentences to run concurrently. He was also sentenced to the county jail on the stolen property counts, and these sentences were ordered to run concurrently with the state prison sentences.

Petitioner was tried on the second escape and the related felonies, case No. 105087, in December 1969; the jury found petitioner guilty of escape by force and violence, robbery and burglary; the jury also found petitioner sane at the time the offenses were committed. He was sentenced to state prison on the three counts, the sentences to run concurrently to each other, but consecutively to any other state prison term petitioner was serving.

Petitioner contends that we should order the Superior Court of Stanislaus County to vacate the judgments in all three cases because the trial judges failed to suspend the criminal trials until such time as petitioner's present sanity was determined, pursuant to Penal Code section 1368. He argues that in each case the medical evidence, as a matter of law, raised a doubt as to petitioner's ability to understand the nature of the proceeding and to assist in his defense, and that the court's failure to suspend the criminal trial, *sua sponte,* was, per se, a violation of the mandate of Penal Code section 1368. The section provides: "If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded; and, from the time of such order, all proceedings in the criminal prosecution shall be suspended until the question of the sanity of the

defendant has been determined, and the trial jury in the criminal prosecution may be discharged, or retained, according to the discretion of the court until the determination of the issue of insanity."

In cases No. 104162 and No. 104188, Dr. Rourke E. Downey reported that petitioner's Wechsler's intelligence scale for children showed a verbal score of 72, a performance score of 60, and full-scale I.Q. of 63. The doctor stated that petitioner was in the "low normal-moron area" but knew the difference between right and wrong. Dr. Walter Rapaport stated that petitioner's mental examination showed "an immature, impulsive, mentally retarded young man who shows fragmented thinking, poor judgment and poor comprehension"; he was of the opinion that petitioner understood the charges against him and the possible penalties and that "in an immature sort of way understood the wrongfulness, unlawfulness and punishability relative to the offenses he. committed and understood the nature and possible consequences at the time of their commission."

In case No. 105087, the medical examinations were made by Drs. Max Brannan and Robert G. Austin. Dr. Brannan reported that petitioner could not add, multiply or subtract, and he could not make explanations of very simple statements and that he remembered very little about his family. He concluded that petitioner was a simple, uneducated, illiterate individual who had very poor judgment, no usable insight into his situation and who "never learned acceptable social behavior, including respect for legal precepts." The doctor volunteered: "I think the fact that he is so unlearned makes it very difficult for him to have any meaningful understanding of the legal procedures in which he is presently involved. That is not to say he is out of touch with reality or is psychotic but, if he only has his values to relate to, he cannot really understand what he hears with any usable understanding."

Dr. Austin described petitioner as "dull normal and uneducated" but expressed the opinion that he was capable of distinguishing right and wrong as applied to his acts. The doctor said he thought petitioner might have a seizure disorder because of a history of head injuries and blackouts and suggested that he be admitted to a hospital for evaluation of possible organic brain disease.

Despite the medical reports regarding petitioner's low level of intelligence, we are not persuaded, entirely, by petitioner's contention that each trial judge who presided at one of his criminal trials abused his discretion, as a matter of law, by failing, *sua sponte,* to suspend the trial in order to determine whether petitioner was insane within the ambit of Penal Code section 1368. The medical evidence in all three cases indicates that peti-

tioner was an antisocial, belligerent individual who knew the difference between right and wrong. In fact, when commenting on petitioner's overall attitude, Dr. Downey stated, "I have a feeling he was better in touch than he admitted." The doctor also testified, "I think his mental capacity is well enough to stand trial."

Furthermore, at his third trial petitioner made several motions indicating he understood the nature of the proceeding and had the ability to assist in his defense. Petitioner moved to discharge the public defender so that he could proceed in propria persona; he made a motion for a 48-hour continuance in order to call certain witnesses from other prisons; he moved for a change of venue. The motions were denied. Then, when the court also denied petitioner's request to stay all proceedings until he could appeal, petitioner rather astutely observed, "A guy hasn't much of a chance in this court if I can't even appeal my motions." Later petitioner, in propria persona, filed a timely notice of appeal.

 We do not, however, reach the question as to whether the trial judges abused their discretion. The limited statutory grounds upon which a writ of error *coram nobis* (*vobis*) may be granted have not been met in this case. (*People* v. *Shorts,* 32 Cal.2d 502 [197 P.2d 330]; *People* v. *Welch,* 61 Cal.2d 786 [40 Cal.Rptr. 238, 394 P.2d 926].) Petitioner has not presented a single fact which was not known to the trial judge or to petitioner's trial counsel at the time of trial. In fact, not only was the very medical evidence upon which petitioner now relies before the court at the time of each trial, but at the third trial petitioner's counsel presented but did not press the issue of petitioner's present sanity. Neither is there anything in the record to suggest that petitioner acted with due diligence after his convictions. On the contrary, petitioner's low rating on the intelligence scale was known from the very beginning to petitioner, his trial counsel and to the attorney who represented petitioner on his three appeals; yet, this proceeding was not instituted until almost two years after petitioner's third conviction. As our Supreme Court explained in *People* v. *Shipman,* 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993]: "The writ of *coram nobis* is granted only when three requirements are met. (1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' [Citations.] (2) Petitioner must also show that the 'newly discovered evidence. . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial.' [Citations.] This second requirement applies even though the evidence in question is not discovered until after the time for

moving for a new trial has elapsed or the motion has been denied. [Citations.] ■■■ (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ.' [Citations.]"

The case of *People* v. *Welch, supra,* 61 Cal.2d 786, is distinguishable. In *Welch* the defendant, who also had a low I.Q., had told the doctor who examined him before trial that his medical history included only the usual childhood diseases and an appendectomy; there was no indication of past or present mental aberrations. Two months after defendant's conviction he was given electroencephalographic examinations at San Quentin, and those examinations disclosed that he had brain damage. It was then discovered that the brain damage had been sustained from an attack of encephalitis when defendant was five years old. The court properly concluded that neither defendant nor his trial counsel knew or could have known of this condition at the time of trial. In addition, while the defendant in *Welch* did not petition for the writ until more than one year after he learned of the brain damage, he spent the intervening period bolstering his case and filling in the gaps of his medical history; the court held that this conduct demonstrated due diligence.

We sympathize with counsel's statement that petitioner should not be "faulted" for his failure to present timely the "present sanity" issue; if petitioner was unable to understand the nature of his criminal trials, or assist his counsel in his defense, he hardly could be expected to raise the issue at the time of trial or to proceed with reasonable diligence after he was convicted. ■■■ We hold, merely, that in claiming that his client may have been insane at the time of his trials, counsel does not offer any evidence which was not known to the petitioner or trial attorneys at the time of trial, in order to bring the petition within the purview of the *Shipman* rule. Rather, counsel raises a question of constitutional dimensions by suggesting, subtly, that it is possible to speculate from the medical evidence which was before each trial judge that petitioner was not accorded due process at any of his trials. (See *People* v. *Pennington,* 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942]; *People* v. *Bute,* 275 Cal.App.2d 143 [79 Cal.Rptr. 721].) This fundamental constitutional issue, however, should be resolved through the filing of a petition for writ of habeas corpus; under the flexible remedy, if petitioner has any evidence to prove that he was insane at the time of his trials, in the sense contemplated by Penal Code section 1368, so that it cannot be said that he was accorded due process, he can present the evidence at that proceeding. (*People* v. *Wheeler,* 5 Cal.App.3d 534 [85 Cal.Rptr. 242].)

If the petition for writ of error *coram vobis* were granted on the basis of the scant record now before us, it would mean that three judgments of conviction relating to a potentially dangerous man would be set aside, even though it were subsequently determined that he was sane at the time of his trials. In short, we decline to set aside the judgments of conviction on the bare possibility that petitioner is and always has been insane. We repeat what this court stated in the *Wheeler* opinion: ". . . *coram nobis* is a remedy of narrow scope . . . Its purpose is to secure relief, where no other remedy exists, . . ." (5 Cal.App.3d 534, 537.) Petitioner has chosen the wrong remedy.[1]

The petition is denied.

Brown (G. A.), P. J., and Franson, J., concurred.

---

[1]Petitioner, confined at Folsom Prison, is not within the territorial jurisdiction of the Fifth District Court of Appeal (*People* v. *Buccheri,* 2 Cal.App.3d 842, 845 [83 Cal.Rptr. 221]); ". . . only the superior court or the District Court of Appeal in the area in which the petitioner is in custody may exercise jurisdiction to entertain a petition for writ of habeas corpus." (*People* v. *Williams,* 238 Cal.App.2d 585, 595 [48 Cal.Rptr. 67].)