[No. B080323. Second Dist., Div. Seven. Nov. 19, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CRAIG MALVEAUX, Defendant and Appellant.

[No. B073853. Second Dist., Div. Seven. Nov. 19, 1996.]

In re CRAIG M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CRAIG M., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.

1426

**COUNSEL**

Bruce Daniel Rosen and Mary Holbrook, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack and Robert R. Anderson, Assistant Attorneys General, Kenneth C. Byrne, Robert Jibson, Raymond L. Brosterhous and Lisa J. Brault, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—This case dramatically illustrates how much can go wrong when a trial court takes actions which affect a cause while it is on appeal. As

a result this court has been forced to consolidate two appeals from two trials, both involving the same defendant and both arising from the same crime, then order a reference to rehear an issue the trial court decided while the case was pending on appeal. One of the two appeals is from a decision of the Los Angeles County Superior Court, Juvenile Department after appellant had been tried in that court for this crime. The other is from a subsequent trial in adult criminal court for the identical crime. In between these two trials the juvenile court held a sui generis proceeding while its own judgment was on appeal. In that proceeding the judge vacated the juvenile court judgment even though it was on appeal, based on a finding appellant was over 18 when he committed the crime. The adult criminal court then proceeded to conduct its own trial of appellant for this crime, resulting in a conviction which also is on appeal in this court.

We concluded the juvenile court lacked jurisdiction to hold the sui generis proceeding to determine appellant's true age since at that time a notice of appeal already had been filed from the original juvenile adjudication. (We further concluded that even if the juvenile department had jurisdiction to conduct this hearing, it failed to afford appellant due process because it did not provide appellant with his right to counsel at this critical stage of the proceedings.) Consequently, we deemed the two appeals as a writ of error *coram vobis* and filed an unpublished opinion (*People* v. *Malveaux* (Aug. 28, 1995) B080323)[1] discussing the legal principles that apply in this situation and ordering a reference to the juvenile department to conduct a proper hearing on this issue. In that opinion, we held that if the referee determines and this court agrees appellant perpetrated a fraud on the court by concealing he was older than 18 at the time of the crime, it was not double jeopardy to try him again in adult court. We further concluded that if the referee indeed finds appellant committed such a fraud on the court it is unnecessary to have yet a second trial in adult criminal court and the conviction in that court can be upheld with a minor unrelated modification of sentence. On the other hand, if the findings are otherwise, the judgment in adult court must be reversed.

The referee has now reported after a hearing at which appellant enjoyed his constitutional right to counsel and this court agrees with its findings. Appellant did perpetrate a fraud on the court by deliberately misleading the juvenile court about his true status as an adult. Accordingly, we conclude the juvenile court judgment is properly vacated and the conviction in adult court for the same offense did not constitute double jeopardy. Accordingly, we affirm that conviction, after modifying the sentence because of an error unrelated to the earlier proceedings in juvenile court.

---

[1]The Supreme Court denied review of this unpublished opinion on November 22, 1995 (S049120).

## FACTS AND PROCEEDINGS BELOW

On July 28, 1992, about midnight, appellant and several youths broke into the home of an elderly woman. The woman called 911 and told the 10-year-old girl who was staying with her to lock the bedroom door. The youths then kicked down the bedroom door and appellant, brandishing a handgun, ordered the occupants to lie on the floor. Appellant and others proceeded to remove personal property from the woman's home. Appellant fired his handgun within the home while he was leaving.

The police arrived, interrupted the robbery in progress and arrested some suspects at the scene. They found appellant about 1:45 a.m. hiding in a nearby garage and took him into custody. Both the elderly woman and the 10-year-old girl identified appellant as one of the robbers.

On July 30, 1992, a juvenile petition was filed in the Los Angeles Superior Court. The petition alleged appellant, then identified as Craig M., was a minor who came within the provisions of Welfare and Institutions Code section 602.[2] Count one of the petition alleged appellant committed robbery of an inhabited dwelling in violation of Penal Code section 211. Count one further alleged appellant had used a firearm within the meaning of Penal Code section 12022.5. Count two alleged appellant was in possession of cocaine in violation of Health and Safety Code section 11350, subdivision (a).

On July 31, 1992, and August 3, 1992, appellant appeared with counsel at a detention hearing and denied the allegations. At this hearing, the court asked appellant his age and date of birth. Appellant replied he was 17 and born on November 9, 1974. His mother verified this date of birth.

On August 20, 1992, the juvenile court commenced a jurisdictional hearing. Appellant appeared with counsel at this hearing. There remained lingering doubts about appellant's age based on the probation officer's report and other testimony. Appellant remained adamant he was 17. The court instructed appellant's mother to provide a copy of his birth certificate, but she did not return to court or provide the certificate.

On August 21, 1992, the juvenile court sustained both counts of the petition. On September 3, 1992, the probation department submitted its report as required by section 706. On September 4, 1992, the court entered judgment committing Craig M. to the California Youth Authority for a

---

[2]All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

10-year period. The matter was continued to September 18th on the nonappearance calendar. Appellant filed a notice of appeal from the juvenile court's judgment on September 8, 1992.

At a hearing on September 18, 1992, the court, in the presence of appellant and counsel, referred to communications it had received from the probation officer and an official at juvenile hall indicating appellant's true age was 26. Appellant's attorney did not object to the content or introduction of this evidence. The matter was continued to September 25, 1992, for respondent to file "the appropriate motion." Despite the fact the juvenile department's judgment was on appeal, respondent did not file a petition for writ of error *coram vobis* in the Court of Appeal. Instead on September 25, 1992, respondent filed a "Motion to Stay Previous CYA Order and Declare Lack of Juvenile Court Jurisdiction" in the juvenile department of the superior court.

On September 28, 1992, appellant appeared in the juvenile department without counsel for a hearing on respondent's sui generis motion. The court failed to advise appellant of his right to have counsel present. Nor did appellant expressly waive the right nor did the court offer to provide counsel. The court merely asked appellant his name and he replied his real name is "James Malvo." The court asked appellant if his true name was "James Malvo" and he responded affirmatively. The court continued the matter one day so that Judge Scarlett, who had heard the jurisdictional and dispositional hearings, could preside over the hearing.

On September 29, 1992, appellant again appeared without counsel and was again not informed of his right to counsel. The juvenile court found appellant had committed fraud on the court in giving a false name and representing he was a minor. The court found appellant's true date of birth was November 11, 1966, and appellant was therefore an adult on the date of the commission of the offenses. The juvenile court stayed the California Youth Authority order and declared it lacked jurisdiction in the matter. The court then ordered appellant be prosecuted in adult criminal court under the general laws of the State of California.

On October 29, 1992, the prosecution filed an information in the adult Criminal Department of the Los Angeles Superior Court. This information charged appellant with three counts of first degree residential robbery, one count of first degree burglary and one count of being a felon in possession of a firearm. The information also included firearm use allegations as to the robbery and burglary counts and firearm-arming allegations, as well. A later amendment added allegations appellant had served four prior separate prison terms as defined in Penal Code section 667.5, subdivision (b).

Trial began on April 30, 1993. On May 14, 1993, the jury found appellant guilty of the robbery and burglary counts but acquitted him of the firearm possession count. The jury found the firearm use allegations untrue but the firearm-arming allegations true. Finally, the court found appellant had admitted the four prior prison term allegations.

On September 2, 1993, the trial court denied appellant's posttrial motions which included a motion to dismiss on grounds appellant had been twice placed in jeopardy since he already had been tried for the same criminal conduct in the juvenile department. The court imposed an aggregate term of fourteen years, four months, which included an eight-month term for the firearm possession count of which appellant had been acquitted.

Appellant filed a timely notice of appeal from this second judgment on September 8, 1993. In the meantime, the appeal from the first judgment, the one the juvenile department rendered on September 4, 1992 (and including the September 28-29 sui generis postjudgment hearing which vacated that judgment) had been proceeding through the appellate process. Random assignment brought that juvenile appeal to this division while the appeal from the adult conviction still in its early stages was assigned to another division of the Second Appellate District Court of Appeal.

This court heard argument on the juvenile appeal of *In re Craig M.* on March 14, 1994. After argument, we concluded it was not possible to properly resolve that appeal without obtaining jurisdiction over the adult criminal appeal in *People* v. *Malveaux.* Accordingly, we requested and obtained consolidation of the two appeals and awaited completion of briefing in *People* v. *Malveaux.* After receiving further supplemental briefing of issues posed by the unique chain of events embraced in this pair of appeals, we heard oral argument in the consolidated cases on June 15, 1995.

On August 28, 1995, this court filed an unpublished opinion concerning the legal issues in this case, but retained jurisdiction through a reference to the juvenile court. This reference instructed that court to conduct a new hearing at which appellant was afforded his constitutional right to counsel. The referee issued its report on April 8, 1996. We afforded the parties an opportunity to file supplemental briefing and heard argument on August 8, 1996.

DISCUSSION

In this opinion, we first address the issues discussed in the original unpublished opinion. We consider the propriety of the trial court's actions

after discovering the possibility, indeed probability, appellant was 26 not 17 when he committed these offenses. We also consider the legal consequences of retrying a defendant in adult court who already has been tried for those same offenses in juvenile court. We then turn to the referee's findings and review them in light of the legal principles announced in our original opinion.

I. *The Juvenile Court Lacked Jurisdiction to Vacate the Juvenile Judgment Because That Judgment Was on Appeal and Thus Within the Jurisdiction of the Court of Appeal.*

■ It is black letter law a trial court loses jurisdiction to vacate its own judgment once a party files a notice of appeal, thus shifting jurisdiction over the cause to the Court of Appeal. (*Mallick v. Superior Court* (1979) 89 Cal.App.3d 434 [152 Cal.Rptr. 503]; *Betz v. Pankow* (1993) 16 Cal.App.4th 931 [20 Cal.Rptr.2d 841], and cases cited therein; *Elsea v. Saberi* (1992) 4 Cal.App.4th 625 [5 Cal.Rptr.2d 742].) There is only one exception.[3] The trial court is allowed to vacate a void—but not a voidable—judgment.

A judgment is void rather than voidable only if the trial court lacked subject matter jurisdiction. (*Betz v. Pankow, supra,* 16 Cal.App.4th 931, 938.) For reasons explained in greater depth in part III, *post,* the juvenile court's initial judgment in *In re Craig M.* was not void, but only "in excess of jurisdiction." (*In re Harris* (1993) 5 Cal.4th 813, 837 [21 Cal.Rptr.2d 373, 855 P.2d 391] [whether a case should proceed in juvenile or adult court does not involve an issue of subject matter jurisdiction].) Since the juvenile court's judgment was in excess of jurisdiction, the judgment was only voidable and not void. Consequently, the court lost jurisdiction over its own judgment after the notice of appeal was filed and it was pending in our court. (*Betz v. Pankow, supra,* 16 Cal.App.4th at pp. 938-939; see also *In re Harris, supra,* 5 Cal.4th at pp. 836-838, fn. 12.)

It is entirely possible the juvenile court judge, and even the prosecutor handling the sui generis postjudgment hearing, remained unaware appellant had filed a notice of appeal so soon after the judgment against him. It also is possible they were unaware the juvenile court lost jurisdiction to vacate its own judgment once the case went on appeal. In either event, the effect was

---

[3] A trial court also loses jurisdiction to take most other actions related to its judgment. It may, however, enter orders which only determine ancillary or collateral matters. (*Betz v. Pankow, supra,* 16 Cal.App.4th 931, 938.) A matter is not considered ancillary or collateral if its resolution impacts the effectiveness of the appeal. (*Elsea v. Saberi, supra,* 4 Cal.App.4th 625.) The juvenile court's order vacating its judgment obviously impacts the effectiveness of an appeal then underway on that judgment because it eliminates the subject matter of the appeal.

the same. The effort to cure the problem created by appellant's alleged age was carried out in the wrong court.

The court with jurisdiction over the juvenile court judgment then on appeal was the Court of Appeal. Thus, this court presented the appropriate forum for relief. The prosecution should have filed a petition for writ of error *coram vobis* in the Court of Appeal based on the same alleged facts as the juvenile court heard and decided. (See *People* v. *Brady* (1973) 30 Cal.App.3d 81 [105 Cal.Rptr. 280].) This court then could have heard, or more likely appointed a referee to hear, the evidence on the question of appellant's age. Depending on its factual findings, this court then could have issued a writ vacating the judgment on appeal or denied the writ and ordered the appeal to proceed. If this court granted the writ, the juvenile court judgment would have ceased to exist and the prosecution could have proceeded against appellant in the adult criminal department. If we denied the writ the juvenile court judgment would have remained alive and on appeal and the prosecution would have been foreclosed from filing its case in the adult criminal department.

The ill effects flowing from what the trial court, advertently or inadvertently, did here form a dramatic illustration of the rationale behind the rule which prohibits trial courts from vacating or otherwise taking actions which affect the substance of their judgments while those judgments are on appeal in another court. In this case, the appellate court ended up with two judgments, one allegedly vacated while on appeal but perhaps not correctly, and the other a possible violation of the double jeopardy rule. Had the two appeals remained in separate divisions it is entirely possible the two appellate courts could have issued contradictory opinions on the validity of the two trials with unpredictable consequences for the "effectiveness" of one appeal or the other.

On the other hand, if the prosecution and the trial court had used the appropriate procedure, *coram vobis* in the Court of Appeal, it would have allowed an orderly disposition of one case before the other one was filed. It also would have permitted this court to consider the possible double jeopardy issue before the defendant in fact was compelled to face a second trial for the same offense. ■ The policy behind double jeopardy is not merely to invalidate convictions resulting from a second trial but to prevent that second trial from taking place at all and thus avoid placing a defendant "twice in jeopardy" for a single offense. For reasons explained below (see pt. III, *post*), we conclude it would not constitute double jeopardy, if appellant committed a fraud on the juvenile court, to try him in the adult criminal department for the same crime. But a contrary ruling would have come a bit

late for an appellant who already had endured a second trial, albeit an invalid one.

## II. *Even If the Juvenile Court Had Jurisdiction to Vacate Its Judgment the Order Was Not Valid Because Appellant Was Denied His Right to Counsel at the Hearing Where His Age Was Decided and the Judgment Vacated.*

■ California Rules of Court, rule 1412(g) states: "At each hearing the court shall advise an unrepresented child, parent, or guardian of the right to be represented by counsel, and, if applicable, of the right to have counsel appointed. . . ." This rule was adopted to conform to the requirements of due process that have been held applicable to juvenile court proceedings. ■ The United States Supreme Court has held that the "assistance of counsel is essential . . . for the determination of delinquency, carrying with it the awesome prospect of incarceration. . . ." (*In re Gault* (1967) 387 U.S. 1, 36 [18 L.Ed.2d 527, 551, 87 S.Ct. 1428].) The presence of counsel affords a person brought before the juvenile court meaningful rights that cannot otherwise be effectively exercised by a youthful or unknowing individual. These rights include " '[t]he rights to . . . present evidence and testimony of one's own, to be unaffected by prejudicial and unreliable evidence, [and] to take an appeal. . . .' " (*In re Gault, supra,* 387 U.S. at p. 38, fn. 65 [18 L.Ed.2d at p. 552].)

The California courts have expanded the protection of fundamental due process rights granted to minors. *In re Gault* was limited to the adjudicatory stage of juvenile proceedings where the outcome might include commitment to a state institution. (*In re Gault, supra,* 387 U.S. at p. 13 [18 L.Ed.2d at p. 538].) Two years later, the California Supreme Court, while recognizing the " 'humane and beneficial elements of the juvenile court system,' " stated that "certain basic rules of due process must be observed. . . ." (*In re Dennis M.* (1969) 70 Cal.2d 444, 455-456 [75 Cal.Rptr. 1, 450 P.2d 296].) These fundamental rights of due process have been expanded to encompass the benefits of the exclusionary rule (*In re Robert T.* (1970) 8 Cal.App.3d 990 [88 Cal.Rptr. 37]) and to the *Miranda* warning (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *In re Roderick P.* (1972) 7 Cal.3d 801, 810 [103 Cal.Rptr. 425, 500 P.2d 1]). The due process guarantees have been expanded to proceedings "where a supplementary petition charges acts which, if they were charged in an original petition, would require these protections and would constitute a crime if committed by an adult [citation], and the disposition results in a substantially more restrictive punishment." (*In re Francis W.* (1974) 42 Cal.App.3d 892, 898 [117 Cal.Rptr. 277]; cited with approval in *In re Authur N.* (1976) 16 Cal.3d 226, 240 [127 Cal.Rptr. 641, 545 P.2d 1345].)

The right to counsel in an adult criminal trial " 'is not a right confined to representation during the trial on the merits.' " (*Mempa* v. *Rhay* (1967) 389 U.S. 128, 133 [19 L.Ed.2d 336, 340, 88 S.Ct. 254], quoting *Moore* v. *Michigan* (1957) 355 U.S. 155 [2 L.Ed.2d 167, 78 S.Ct. 191] [reversing revocation of probation and implementation of deferred sentencing where revocation hearing was held without presence of counsel].) The *Mempa* v. *Rhay* court, in interpreting the United States Supreme Court cases which discuss the right to counsel, concludes, "[these cases] clearly stand for the proposition that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal [*sic*] accused may be affected." (*Mempa* v. *Rhay*, *supra*, 389 U.S. at p. 134 [19 L.Ed.2d at p. 340].)

In *Kent* v. *United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], the Supreme Court decided a case involving the juvenile court's waiver of jurisdiction. Because the case was decided on procedural errors, the court's decision did not reach the constitutional requirements of due process. (*Id.* at p. 552 [16 L.Ed.2d at p. 92].) However, the court stated the decision to waive the jurisdiction of the juvenile court was a " 'critically important' " question and that ". . . there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel . . . ." (*Id.* at pp. 553, 554 [16 L.Ed.2d at p. 93].)

██ Craig M. was brought before the juvenile court on September 28 and 29, 1992, to determine if the juvenile court could exercise jurisdiction over him and place him in the California Youth Authority. The court did not inform appellant of his right to counsel, nor did it inform him of his right to assert the privilege against self-incrimination. (Cal. Rules of Court, rule 1412(i)(1).) This proceeding determined whether appellant would be subjected to the general laws of the State of California or would be afforded the special protection of the juvenile court system. This is perhaps the most critical decision that can be made in juvenile court. In this respect, it is equivalent to a fitness hearing.

The presence of counsel may have protected appellant from the consideration of biased and untrustworthy evidence.[4] Counsel would have served the important role of preserving the record for appeal. Counsel, in effect, would have served the vital role of protecting appellant's rights in an adversarial proceeding. "When a defendant has been denied any essential element of a

---

[4]Since appellant was not represented by counsel at this hearing, in our original unpublished opinion we did not determine the veracity of the documents Judge Scarlett received, or the reasonableness of Judge Scarlett's conclusions based on those documents.

fair trial or due process . . . the judgment cannot stand. [Citations.]" (*People v. Sarazzawski* (1945) 27 Cal.2d 7, 11 [161 P.2d 934].) The right to counsel is a fundamental due process guarantee and we therefore must reverse the order of the juvenile court dated September 29, 1992, vacating its judgment even if we assume that court had jurisdiction to consider and issue such an order. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]; *Mempa* v. *Rhay, supra,* 389 U.S. 128.)

Accordingly, for both jurisdictional reasons and constitutional reasons we concluded the order vacating the juvenile department's judgment is invalid. Pursuant to that finding, we instructed the juvenile court to appoint a referee to conduct a hearing on the issue of appellant's age which comported with the requirements of due process, including affording him his right to counsel at that proceeding. However, that was not the end of the matter. Because appellant already had been tried twice—once in juvenile court and once in adult court—for the same offense, we felt it necessary to consider the double jeopardy implications should the referee find appellant actually was over 18 at the time he committed the offense. In our view, the answer to that legal question would affect the scope of the referee's hearing and the required findings pursuant to the reference. (The referee's findings are discussed in part IV, *post.*)

III. *In Order to Avoid the Bar of Double Jeopardy to a Subsequent Trial in Adult Court, Appellant Must Have Committed Fraud on the Juvenile Court Concerning His True Age.*

 The inquiry into whether jeopardy attaches to a proceeding begins with a determination of whether the court in the first proceeding had jurisdiction. Thus, if the referee were to have found appellant's true date of birth is November 9, 1974, the juvenile court would have had jurisdiction over appellant at all times. (§ 602.) The court's disposition ordering Craig M. to the California Youth Authority would have stood as proper and we would have vacated the judgment against appellant in the adult criminal department of the superior court under double jeopardy principles. (See *In re Bryan* (1976) 16 Cal.3d 782 [129 Cal.Rptr. 293, 548 P.2d 693]; *Breed* v. *Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779].)

If, on the other hand, appellant was over the age of 18 at the time of the commission of the crime charged, the juvenile court's adjudication and disposition in the case will have been in excess of jurisdiction. Nonetheless, such a finding does not necessarily mean the court is free to vacate the juvenile adjudication, against appellant's wishes, and proceed to retry him in adult court. For reasons explained below (and in our prior unpublished opinion), the question is more complex than that.

■ The Superior Court of California is divided into departments. Statutory provisions provide for the delegation of authority for each department to hear and determine a cause. (See, e.g., § 602.) "Declarations of this sort might imply that, since the wrong 'court' cannot hear or determine the cause, it lacks jurisdiction of the subject matter. . . . [However] [t]here is *one superior court* in the county, though different judges thereof may sit in separate departments." (2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 184, p. 209, italics in original.)

■ In the case of *In re Harris, supra,* 5 Cal.4th 813, 837, the Supreme Court of California determined the question whether the superior court lacked jurisdiction to try a minor under the age of 16 under general, adult laws. On this issue, it determined "[w]hether a case should proceed in juvenile or adult court 'does not involve an issue of subject matter jurisdiction.' [Citation.] There is but one superior court in a county, though it is divided into different departments. [Citation.] Because petitioner was charged with a felony, the superior court had subject matter jurisdiction. If he was under 16 years of age, however, the criminal department of the superior court lacked jurisdiction *to act,* and its trial of petitioner thus constituted *an excess* of jurisdiction, not a lack of fundamental jurisdiction. . . . [Citation.]" (Italics in original.)

The facts of this case are the exact reverse of *In re Harris.* Here, appellant was charged, detained, and sentenced in juvenile court prior to the determination that he was over 18. "The jurisdiction of causes is vested by the constitution in the *court,* not in any particular judge or department thereof." (*White* v. *Superior Court* (1895) 110 Cal. 60, 67 [42 P. 480], italics in original.) Because the crimes charged are within the jurisdiction of the superior court, they are within the juvenile court's "fundamental jurisdiction," but the court's acts were "in excess of jurisdiction."[5]

■ "[D]ouble jeopardy prohibitions apply in juvenile proceedings. [Citation.] Jeopardy attached . . . when the jurisdictional hearing was 'entered upon.' [Citation.]" (*Jesse W.* v. *Superior Court* (1978) 20 Cal.3d 893, 896 [145 Cal.Rptr. 1, 576 P.2d 963].) Jeopardy attaches when the jurisdictional stage of juvenile court proceedings are begun; when the first witness is sworn. (See *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664]; *In re Bryan, supra,* 16 Cal.3d at p. 785; *Breed* v. *Jones, supra,* 421 U.S. 519, 531 [44 L.Ed.2d 346, 356-357].) The prohibition is not only against multiple sentences, but against multiple trials.

---

[5]For a definitive exposition on the development of the jurisdictional aspects of the separation of the superior court into departments see *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715].

(*Breed* v. *Jones, supra*, 421 U.S. at pp. 532-533 [44 L.Ed.2d at pp. 357-358], citing *Price* v. *Georgia* (1970) 398 U.S. 323, 329 [26 L.Ed.2d 300, 305, 90 S.Ct. 1757].)

The double jeopardy clause protects the person charged from defending himself or herself multiple times against the resources of the state and the attendant burdens. (*Breed* v. *Jones, supra*, 421 U.S. at pp. 529-530 [44 L.Ed.2d at pp. 355-356]; *Green* v. *United States* (1957) 355 U.S. 184 [2 L.Ed.2d 199, 78 S.Ct. 221, 61 A.L.R.2d 1119].) Exceptions to the prohibition are granted only in limited circumstances. (*Breed* v. *Jones, supra*, 421 U.S. at p. 533 [44 L.Ed.2d at pp. 357-358].) The prohibition does not apply where there is a lack of fundamental jurisdiction (see *Serfass* v. *United* States (1975) 420 U.S. 377, 391 [43 L.Ed.2d 265, 275-276, 95 S.Ct. 1055]), or where the person is retried after successful reversal of conviction for trial error (*In re Shanea J.* (1984) 150 Cal.App.3d 831, 842-844 [198 Cal.Rptr. 228], and cases collected.)[6] The double jeopardy clause does however bar retrial of a defendant where the original court had fundamental jurisdiction over the cause but acted in excess of jurisdiction. (*People* v. *Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 70-71 [2 Cal.Rptr.2d 389, 820 P.2d 613].)[7] ▇ That, as we have seen, is the case here. The juvenile court had "fundamental jurisdiction" even though it was acting "in excess of its jurisdiction" when it adjudicated appellant for these offenses. Consequently, jeopardy attached.

There is, however, an important exception to the bar against retrial which applies here. ▇ A defendant cannot prevent a second trial where it can be determined from the record that defendant intentionally committed fraud on the court in securing the first conviction.[8] (See generally, Annot. (1961) 75 A.L.R.2d 683, 691, § 4 and cases cited.) The United States Supreme

---

[6]The court in *In re Shanea J.* declined to decide if jeopardy attached at the juvenile hearing at issue in that case. (See *In re Shanea J., supra*, 150 Cal.App.3d at p. 841, fn. 9.)

[7]Several cases have decided jeopardy had not attached where the original action was held in a court without jurisdiction to try the cause. (See, e.g., *Ball* v. *United States* (1896) 163 U.S. 662, 669 [41 L.Ed. 300, 302-303, 16 S.Ct. 1192]; *Matter of D. M.* (Tex.Ct.App. 1980) 611 S.W.2d 880, 883; *Talbott* v. *Commonwealth* (1915) 166 Ky. 659 [179 S.W. 621]; *Commonwealth* v. *Davis* (1916) 169 Ky. 681 [185 S.W. 73].)

Where these decisions are based on proceedings instituted in other courts and not different departments of the same court, they are not in conflict with our decision. (See, *People* v. *Zadro* (1937) 20 Cal.App.2d 320 [66 P.2d 1204]; *People* v. *Hamberg* (1890) 84 Cal. 468 [24 P. 298].) Because we are convinced that under California law the proceedings of the juvenile court were in excess of jurisdiction, we do not follow the holdings of those cases.

[8]We in no way wish to expand this limited exception to the bar against retrial. The California Supreme Court has recognized the prohibition against allowing the prosecution "the opportunity to ameliorate trial deficiencies, evidentiary or procedural, that could have been otherwise timely corrected. [Citations.]" (*People* v. *Superior Court* (*Marks*), *supra*, 1 Cal.4th at p. 77.)

Court has recognized the courts have an inherent ability to correct judgments obtained through fraud or intentional misrepresentation. (*Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.* (1944) 322 U.S. 238, 248 [88 L.Ed. 1250, 1256-1257, 64 S.Ct. 997].) The United States Court of Appeals for the Seventh Circuit, using the rationale developed in *Hazel-Atlas*, held that the district court had the inherent power to vacate a criminal sentence obtained through fraud or misrepresentation. (*United States* v. *Bishop* (7th Cir. 1985) 774 F.2d 771, 774.) The *Bishop* court went on to state, ". . . the defendant's action in intentionally deceiving the court strikes at the very heart and foundation of the American system of justice. If a defendant, . . . , intentionally commits a fraud upon the court by providing the court with erroneous information that the court relies upon, . . . he certainly must bear the consequences of his fraudulent and deceitful actions." (*Id.* at p. 776.)

In *Goene* v. *State* (Fla. 1991) 577 So.2d 1306, the trial court vacated a sentence imposed after the defendant misrepresented both his name and that he had no prior convictions. The Supreme Court of Florida held that any "orders, judgments, or decrees which are the product of fraud, deceit, or collusion 'may be vacated, modified, opened, or otherwise acted upon *at any time*.'" (*Id.* at p. 1309, italics in original.)

The California courts have long recognized that where the "former conviction was procured by the fraud, connivance, or collusion of the defendant, this fact vitiates it, and it is no bar to a subsequent prosecution. [Citations.]" (*People* v. *McDaniels* (1902) 137 Cal. 192, 199 [69 P. 1006].) Where the defendant perpetrates fraud on the court to obtain a conviction on a lesser charge, or a charge he knows is false, the subsequent trial of the defendant is not barred by the prohibition against double jeopardy. (See *Hampton* v. *Municipal Court* (1966) 242 Cal.App.2d 689 [51 Cal.Rptr. 760]; *Gail* v. *Municipal Court* (1967) 251 Cal.App.2d 1005 [60 Cal.Rptr. 91]; *People* v. *Hartfield* (1970) 11 Cal.App.3d 1073 [90 Cal.Rptr. 274].)[9] The perpetration of fraud on the court must be affirmative actions taken on the part of the defendant. The prosecution cannot use this exception to the bar against double jeopardy to get subsequent attempts at convicting defendant due to trial errors that could have been corrected in a timely manner. (See fn. 8, *supra*.)

IV. *Instructions to the Referee and This Court's Adoption of the Referee's Findings.*

 Pursuant to the legal principles discussed above, this court outlined its expectations of the referee.

---

[9]Florida recognizes a distinction between intrinsic and extrinsic fraud for the purposes of determining what constitutes fraud on the court. Under their determination, only extrinsic fraud constitutes fraud on the court. (See *Driscoll* v. *State* (Fla.Dist.Ct.App. 1989) 538 So.2d 1283, 1285-1286.) We refuse to draw such a distinction under California law.

"Consequently, if the referee in a properly conducted hearing determines appellant was over the age of 18 and committed fraud on the court in concealing his age, the juvenile department judgment should be vacated and double jeopardy does not invalidate the subsequent judgment against him in the adult criminal department.[10] On the other hand, if the referee finds appellant is over the age of 18 but did not commit a fraud on the court, the double jeopardy clause of the Fifth Amendment as made applicable to the states through the Fourteenth Amendment barred a second trial of appellant in the adult criminal department. In the latter event, the juvenile judgment remains in effect as the adult criminal judgment remained in effect in *In re Harris*, but the adult criminal department's judgment must be reversed and vacated.

"While we have attempted to foresee the legal consequences of all possible configurations of the facts which might emerge from the referee's hearing, we are not fully confident we have. As a consequence, we are instructing the referee to return a report to this court containing that officer's factual findings as to appellant's age and whether he committed a fraud on the court, along with recommendations concerning the proper disposition of the two judgments against appellant—*In re Craig M.* in the juvenile department and *People* v. *Malveaux* in the adult criminal department. Where those recommendations address matters decided in this opinion, they should be consistent with the views expressed in this opinion."

The referee held a hearing on April 8, 1996, and appellant was represented by an attorney, Rosemarie Gallegos, at that hearing. In a report filed April 15, 1996, the referee issued its findings and recommendations as this court requested. After review, this court concludes substantial evidence supports the referee's findings appellant deliberately and affirmatively misled the juvenile department about his true age, claiming to be 17 when his true age was 26.

According to the record, appellant invoked his Fifth Amendment rights at the hearing before the referee and thus was declared unavailable as a witness. Thus, the referee based its findings on other admissible evidence, principally documentary.

Appellant does not contest the referee's finding his true birth date is November 9, 1966, and thus, his true age at the time of the offense was 26.

---

[10]In supplemental briefs filed in this court, both parties conceded the existing adult criminal department judgment could stand if a proper proceeding determined appellant was over 18 at the time of the commission of the crimes and double jeopardy did not bar this second trial. That is, they conceded it would not be necessary to order yet a third trial, a retrial in adult criminal court, on some theory the first trial in that court was a nullity because it was conducted pursuant to an invalid vacation of the initial juvenile court judgment.

This finding is based on evidence of appellant's birth certificate and a Department of Corrections packet.

Appellant does contest the finding he committed a fraud on the court. The referee based its finding on a review of reporter's transcripts of juvenile court hearings on September 4 and 29, 1992, the proceedings in the adult criminal court and appellant's adult probation report. That record amply documents appellant's affirmative representations to the juvenile department that he was born November 9, 1974, when he well knew he was born *eight years* earlier. Thus, this is not a case where the juvenile court erroneously assumed a youthful looking person haled into that court was a minor when he actually was an adult. Rather, it is a case where an accused affirmatively misstated his true age in an attempt to be treated as a juvenile offender rather than an adult criminal defendant. That is a clear "fraud on the court."[11] Thus, for reasons explained earlier in this opinion, the juvenile court adjudication does not act as a double jeopardy bar against a retrial in the proper court, the adult criminal department, for this identical crime.

For reasons expressed earlier in this opinion, we also agree with the referee's recommendations, most of them dictated by the legal discussion contained in our earlier unpublished opinion. The referee recommended the juvenile department's initial adjudication and disposition be vacated, and the judgment of the adult criminal court be affirmed as not representing double jeopardy. Since this is consistent with our earlier opinion and in our view the proper result, we adopt those recommendations in our judgment.

V. *The Sentence Imposed in the Adult Criminal Department Must Be Modified Because Appellant Was Sentenced on a Count of Which the Jury Acquitted Him.\**

. . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment of the juvenile court is vacated. The judgment of the adult criminal department is modified to eliminate that portion of the sentence

---

[11]In his letter brief submitted after the referee issued its report, appellant argues his affirmative false representations about his age did not constitute a "fraud on the court" because it was intrinsic not extrinsic fraud. As discussed above (see fn. 9, *ante*), we reject this distinction between intrinsic and extrinsic fraud for purposes of defining a "fraud on the court." This same holding appeared in the unpublished opinion which formed the "law of the case" for the referee's hearing.

\*See footnote, *ante*, page 1425.

(eight months) imposed on count five charging possession of a firearm by a convicted felon and, as modified, is affirmed.

Lillie, P. J., and Woods, J., concurred.