[No. B128676. Second Dist., Div. Six. July 22, 1999.]

In re DEREK W., a Person Coming Under the Juvenile Court Law.
DAVID W., Plaintiff and Appellant, v.
SANTA BARBARA COUNTY CHILD PROTECTIVE SERVICES,
Defendant and Respondent.

**COUNSEL**

Marin Williamson for Plaintiff and Appellant.

Stephen Shane Stark, County Counsel, and Gustavo E. Lavayen, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**YEGAN, J.**—David W. petitions for a writ of error *coram vobis* to vacate the judgment terminating his parental rights to his son, Derek, on the ground that the juvenile court failed to comply with the Indian Child Welfare Act (ICWA), 25 United States Code Annotated section 1901 et seq.[1] We have issued an order to show cause. We now deny the petition.

*Facts and Procedural History*

Derek, who is of "mixed race but dark skinned," was born in 1989, addicted to cocaine and amphetamine. He was removed from the custody of his parents, Adele B. and David W., and placed in foster care with Stephanie and John K., who are Caucasian. Derek has lived with the K.'s since he was nine days old. Derek suffers from developmental delay, a respiratory condition similar to asthma, and has behavioral and emotional difficulties. Reunification efforts with David W. failed.

In 1992, the court selected long-term foster care as the permanent plan for Derek W., after determining that he was unlikely to be adopted due to his multiple special needs. We affirmed that order in a nonpublished opinion. (*In re Derek W.* (Apr. 28, 1992) B059107 [nonpub. opn.].) In 1998, the K.'s asked to adopt Derek and the court scheduled a hearing to determine whether to terminate David W.'s parental rights. (Welf. & Inst. Code, § 366.26.) David W. contested the termination, arguing that guardianship remained the preferred permanent plan for Derek because he would benefit from continuing his relationship with David W. (Welf. & Inst. Code, § 366.26, subd. (c)(1)(A).)

---

[1]David W. also appealed the judgment which we affirm by separate opinion filed this day. (*In re Derek W.* (1999) 73 Cal.App.4th 823 [86 Cal.Rptr.2d 739].)

At the hearing, David W. testified that he was worried about Derek's potential adoption by the K's because they are Caucasian and Derek is of mixed race. He further testified, "Derek's not only African American. I'm part Cherokee Indian. His mother is Costa Rican and there is—in my view I'm not trying to be prejudicial or anything. [¶] In my view there is no person other than a Black man that can teach another Black man about his race or culture."

David W. provided no further information concerning his status as an Indian or Derek's potential status as an Indian child within the meaning of the ICWA.[2] The issue was not mentioned again during the proceedings. When the court terminated parental rights, David W. did not object on the ground that the court had failed to comply with the ICWA.

David W. first raised the issue of whether the ICWA applied to Derek in this petition for writ of error *coram vobis*. In his accompanying declaration, David W. states his belief that his "ancestry is more than three-fourths American Indian." According to David W., his paternal grandparents were Cherokee Indians of the "Smoky Mountain" tribe with close ties to a Knoxville, Tennessee reservation. David W. believes that his maternal grandmother was also part Indian. As a child, David W. "frequently" visited Cherokee Indian reservations in Tennessee, where he once "participated in a Cherokee ceremony wherein [he] became the 'blood brother' of a Cherokee boy who resided on the reservation." There is no evidence that David W. or his grandparents are enrolled as members of any Indian tribe. Although David W. claims to "identify" with his Native American heritage, he does not state whether, as an adult, he maintained any tie to any tribe or to his paternal grandparents. David W. argues that he was unaware his heritage was significant to the dependency proceeding until after he appealed the judgment terminating his parental rights.

### Coram Vobis Procedural Bar

The writ of error *coram vobis* exists to "correct an error of fact which was unrecognized prior to the final disposition of the proceeding. It is not intended as a means of revising findings based on known facts, or facts that should have been known by the exercise of ordinary and reasonable diligence." (*In re Dyer* (1948) 85 Cal.App.2d 394, 399 [193 P.2d 69].)[3] Accordingly, the scope of the writ is extremely narrow and it may not be

---

[2] The ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and either (a) is a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a tribal member." (25 U.S.C.A. § 1903(4).)

[3] The writ of error *coram vobis* is identical to the writ of error *coram nobis*, except that it is addressed to an appellate court rather than to the court that rendered the judgment. (*Rollins* v.

used where some other remedy is available. (*Rollins* v. *City and County of San Francisco, supra,* 37 Cal.App.3d 145, 150.)

As our Supreme Court stated in *People* v. *Shipman* (1965) 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993], three requirements must be met before a writ of error *coram vobis* may be granted: "(1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' (*People* v. *Mendez* [(1946)] 28 Cal.2d 686, 688 [171 P.2d 425] . . . .) (2) Petitioner must also show that the 'newly discovered evidence . . . [does not go] to the merits of issues [of fact] tried . . . . (*People* v. *Tuthill* [(1948)] 32 Cal.2d 819, 822 [198 P.2d 505] . . . .) This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. [Citations.] (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. . . .' (*People* v. *Shorts* [(1948)] 32 Cal.2d 502, 513 [197 P.2d 330] . . . .)"

■  The current petition fails to meet any of these requirements and must, therefore, be denied on procedural grounds. First, the fact at issue, Derek's potential status as an Indian child, was presented to the court at the Welfare and Institutions Code section 366.26 hearing by David W.'s testimony. (*People* v. *Brady, supra,* 30 Cal.App.3d at p. 86.) Second, potential status as an Indian child goes to the merits of the order terminating parental rights because the ICWA imposes standards for dependency proceedings involving Indian children that differ from those applied to non-Indian children. (*In re Bridget R.* (1996) 41 Cal.App.4th 1483, 1497-1498 [49 Cal.Rptr.2d 507].) Third, at the time of the hearing, David W. was unquestionably aware of the fact because he volunteered it in his testimony. Even if David W. did not then understand its significance to the proceeding, he could have determined that by exercising reasonable diligence.

*Coram Vobis Merits*

The petition is also denied on the merits because David W. fails to carry his burden to prove that Derek comes within the ICWA. (25 U.S.C.A. § 1903(4).) Several California courts have held that the ICWA is limited by the "existing Indian family" doctrine. (See, e.g., *Crystal R.* v. *Superior Court* (1997) 59 Cal.App.4th 703, 706 [69 Cal.Rptr.2d 414]; *In re Alexandria Y.* (1996) 45 Cal.App.4th 1483, 1493-1494 [53 Cal.Rptr.2d 679]; *In re Bridget R., supra,* 41 Cal.App.4th at pp. 1511-1512.) This doctrine states the ICWA

*City and County of San Francisco* (1974) 37 Cal.App.3d 145, 150, fn. 5 [112 Cal.Rptr. 168]; *People* v. *Brady* (1973) 30 Cal.App.3d 81, 83 [105 Cal.Rptr. 280].)

is inapplicable where the child and the biological parent are not "residents or domiciliaries of an Indian reservation, are not socially or culturally connected with an Indian community, and, in all respects *except genetic heritage*, are indistinguishable from other residents of the state." (*In re Bridget R., supra*, 41 Cal.App.4th at p. 1501.) The limitation is necessary both to protect the child's constitutional right to preserve the continuity and stability of his or her family relationships (*id.*, at pp. 1506-1508), and to accomplish the "ICWA's underlying policies of preserving Indian culture and promoting the stability and security of Indian tribes and families . . . ." (*Id.* at p. 1498.)

Other California courts have rejected the "existing Indian family" doctrine, primarily on the ground that this judicially created doctrine is unnecessary to protect the family rights of Indian children because the ICWA itself "permits the court to depart from [its] statutory [placement] preferences where good cause exists to do so." (*In re Alicia S.* (1998) 65 Cal.App.4th 79, 88 [76 Cal.Rptr.2d 121]; see also *Adoption of Lindsay C.* (1991) 229 Cal.App.3d 404 [280 Cal.Rptr. 194]; *In re Crystal K.* (1990) 226 Cal.App.3d 655 [276 Cal.Rptr. 619]; *In re Junious M.* (1983) 144 Cal.App.3d 786 [193 Cal.Rptr. 40].) The court in *Alicia S.* opined that "good cause" would exist where the ICWA would otherwise cause "an Indian child to be removed from the non-Indian home where she had spent most or all of her life and placed in an Indian environment with which she was completely unfamiliar." (*In re Alicia S., supra*, 65 Cal.App.4th at p. 88.)[4]

Here, as a matter of law, there is no "existing Indian family" and there is "good cause" for the courts to depart from the ICWA. A parent seeking refuge under the ICWA umbrella must timely do so. We need not here attempt to say at what stage a parent must timely assert rights under the ICWA. But here, as a matter of law, the time has long passed. This dependency proceeding has been pending for nearly a decade. The facts relevant to an application of the ICWA were only conclusionally mentioned at the eleventh hour. The phrase, "Indian Child Welfare Act," is not a talismanic incantation which can be uttered at any time to defeat the jurisdiction of California courts.

---

[4]David W. provided no evidence that he is a part of an existing Indian family, or ever provided such a family for Derek. He says only that his paternal grandparents were affiliated with the Smoky Mountain tribe of Cherokee Indians and that, when David W. was a child, he participated with them in events at a reservation near Knoxville, Tennessee. There is no evidence that David W. is, or is eligible to become, a member of any Indian tribe. Nor is there any indication that he has, as an adult, participated in any way in the culture or traditions of any tribe in which he is eligible for membership. Although David W. testified that he has discussed his African-American heritage with Derek, there is no evidence that he has done the same with respect to his Indian heritage.

To apply the ICWA at this late date would require the setting aside of all proceedings. After determining David W. and Derek's tribal membership status, the court would have to provide notice to the affected tribe and additional reunification services to David W. (25 U.S.C.A. § 1912(a), (d).) It would then be required to hold additional hearings, with the mandatory participation of "qualified expert witnesses," on the question of whether returning Derek to David W.'s custody would cause him serious emotional or physical damage. (25 U.S.C.A. § 1912(f).) Only then could the juvenile court consider whether "good cause" existed to depart from the ICWA's placement preferences. (25 U.S.C.A. § 1915(a).)

There is no reason to doubt David W.'s love for his child. However, we are unwilling to plunge the parties and the juvenile court into this morass where there is no evidence that doing so would serve the underlying policies of the ICWA by preserving Indian culture and protecting the stability and security of an Indian tribe and family. (*In re Bridget R., supra,* 41 Cal.App.4th at p. 1498.) "Somewhere along the line, litigation must cease." (*In re Marriage of Crook* (1992) 2 Cal.App.4th 1606, 1613 [3 Cal.Rptr.2d 905].)

The order to show cause is discharged and the petition for writ of error *coram vobis* is denied.

Gilbert, Acting P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 6, 1999.